**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF FLORIDA**

**TAMPA DIVISION**

UNITED STATES OF AMERICA,

    Plaintiff,

    vs.                       Case No.: 8:24-cr-00564-KKM-TGW

DANIEL LIBURDI,

    Defendant.

_____/

**DEFENDANT DANIEL LIBURDI'S MOTION FOR PROTECTIVE**

**ORDER OR TO QUASH GRAND JURY SUBPOENA**

COMES NOW, the Defendant, Daniel Vincent Liburdi ("Liburdi"), by and through his undersigned counsel, and moves this Honorable Court to issue an Order quashing Grand Jury Subpoena No. 2022R01686-167 ("Subpoena"), or to issue a protective order preventing disclosure, pursuant to the said Subpoena issued by the Government seeking records and evidence concerning Liburdi, Swipe Wyre Media LLC, XMY Enterprise LLC, Green Brick Media LLC, GGM Group Family Office LLC, Pompea Mountain TR, GGM Group LLC, Poseidon Yacht Charters LLC, Merchant Corner LLC, Time

1

Management Plus LLC, Merchant Manager Limited LLC, Endless Viewz LLC, Power Play Media LLC, and Coastal Capital Investments Group.

The Subpoena was served on Goldhawk Financial PLLC ("Goldhawk"); compliance remains pending. The subpoenaed records and evidence are necessarily in the possession of Goldhawk, the certified public accounting firm ("CPA"), for the sole purpose of preparing and filing tax returns timely and accurately, as required by law. The subpoenaed documents were either submitted to Goldhawk by Liburdi and purportedly related business entities for the purpose of preparing and filing Federal Returns timely and accurately, or prepared by Goldhawk for the accounting and tax preparation services rendered.[1]

## 1.   MOTION

Liburdi, by and through the undersigned counsel, and moves this court to quash the Grand Jury Subpoena, or to issue a protective order preventing disclosure, pursuant to the Subpoena issued by the Government seeking records and evidence concerning Liburdi and allegedly related business entities.

## 2.   PROCEDURAL HISTORY

---

[1] The professional accounting and tax preparation services are necessary in order to prepare and then file accurate tax returns.

1. On December 18, 2024, a Federal Grand Jury in the Middle District of Florida returned an indictment charging Liburdi with conspiracy to commit bank fraud, in violation of 18 U.S.C. § 1349 (Count One), two substantive counts of bank fraud, in violation of 18 U.S.C. § 1344 (Counts Two and Three); and conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(a)(1)(A) (Count Four). (PACER Doc. 1).

2. On January 15, 2025, the Government issued a grand jury subpoena to Goldhawk. The Subpoena required Goldhawk to provide information, documents, and records related to Liburdi and other entities, including but not limited to "All books, papers, records, correspondence, or other data in your possession, custody, or control concerning any accounting services, consulting services, and/or the preparation of Federal or state tax returns." (Ex. 1, Subpoena at 1.)

The Subpoena also required Goldhawk to produce, among others, bank statements, financial statements, "Records used in or created for or during the preparation of Federal and State income tax returns," records of gross income and expenses, billing records, and "correspondence or e-mails furnished by or on behalf of the above-named individuals/entities for the preparation of state and federal income tax returns." (Ex. 1 at 2.) The Subpoena contained a grand jury reference number of 2022R01686; this

reference number is exactly the same as the reference number assigned to the Federal Grand Jury that returned the indictment charging Liburdi and other co-defendants.

### 3.   MEMORANDUM OF LAW

### *A. Standing*

Fed. R. Crim. P. 17(c)(2) provides that "On motion made promptly, the court may quash or modify the subpoena if compliance would be unreasonable or oppressive." In *Brown v. Braddick*, 595 F.2d 961, 967 (5th Cir 1979), the court held that a party does not have standing to challenge a subpoena issued to a third party absent a claim of any personal right or privilege with respect to the materials subpoenaed. See also *Patrick Collins, Inc. v Doe*, 2012 US Dist LEXIS 186718 (MD Fla Sep. 20, 2012, No. 3:12-cv-334-J-32JBT), a party has no standing to move to quash a grand jury subpoena issued to a third party absent a claim of privilege, proprietary interest, or personal interest in the subpoenaed matter.

Liburdi has a privacy interest in the subpoenaed materials and an unassailable Fifth Amendment privilege against self-incrimination. Liburdi also enjoys the accountant-client privilege protected by Florida Statutes. The undersigned concedes that the accountant-client privilege under FL Stat §

4

90.5055 is not recognized under Federal Law.[2]  However, see *In re Grand Jury Subpoena Dated November 14, 1989*, 728 F Supp 368, 373 (WD Pa 1990), in determining whether, "in light of reason and experience," a Federal Court should adopt a state statutory privilege, the court should balance the state's confidentiality interest against the Government's interests in prosecution. Whether the state statutory privilege should extend to federal cases is decided on a case-by-case basis; here, the Western District of Pennsylvania determined that the state's interests outweigh the Government's and adopted Pennsylvania's privilege afforded to general assistance and food stamp records. Similarly, we argue that the subpoenaed documents are or should be privileged under Florida statute, and Liburdi reasonably expected those documents and materials to be kept in strict confidence. Individuals and businesses regularly retain accounting services to timely and accurately prepare and file tax returns. If this court does not recognize Florida's accountant-client privilege, the Government can freely and without limit obtain otherwise decent and law-abiding individuals' and businesses' privileged records, thus having a chilling and suffocating effect on Florida business markets. Florida's interest in the integrity and confidentiality of the

---

[2] Under Federal Rule of Evidence § 501, the common law, interpreted in light of reason and experience, governs a claim of privilege unless the United States Constitution, a federal statute, or Supreme Court rules provide otherwise.

accountant-client relationship outweighs the Government's interest in the investigation; this court should recognize and adopt Florida's accountant-client privilege and apply it here.

The Subpoena required Goldhawk to produce "All books, papers, records, correspondence, or other data" concerning any services it provided to Liburdi and other business entities allegedly related to Liburdi. (Ex. 1 at 1.) The Subpoena required Goldhawk to produce "Bank statements, cancelled checks, deposit receipts, wire transfers, financial statements" furnished by Goldhawk, Liburdi, or certain named entities, and used overly broad language to request all those records showing "gross income received and expenses incurred by" Liburdi and the named entities. (Id at 2.) The Subpoena also seeks compelled production of emails and other correspondence between Goldhawk and the Defendant. (Id) The materials subpoenaed were either submitted to Goldhawk by Liburdi and/or the named entities for the sole purpose of preparing and filing Federal and State tax returns timely and accurately, or prepared by Goldhawk to facilitate and coordinate its work with Liburdi and for the named entities. Thus, the subpoenaed materials are necessarily in the possession of Goldhawk. Under FL Stat § 90.5055, communication between an accountant and the accountant's client is "confidential" if it is not intended to be disclosed to third persons. The client has a privilege to prevent any other person from

disclosing the contents of confidential communications with an accountant. This privilege includes other confidential information obtained by the accountant from the client for the purpose of rendering accounting advice. As argued above, the subpoenaed materials fall under the protection of FL Stat § 90.5055, and Liburdi reasonably expected the subpoenaed materials to be kept in strict confidence; hence, those materials were privileged, Liburdi has a reasonable privacy interest in them. Clearly, Liburdi is the real party in interest and has standing to challenge the grand jury Subpoena.

Even if the court concludes that FL Stat § 90.5055 is not available within the context of this investigation, Liburdi still has standing to object because:

1. Those are his documents, records, and emails, and

2. Much of what is sought from Goldhawk is related to Tax Minimization advice, and *that* is immune from compelled production.[3]

### B. Unreasonable, oppressive, vague, and broad

A subpoena may be "unreasonable or oppressive" if, as here, it is "overly vague," or if, as here, "excessively broad," or if it seeks information that is irrelevant or privileged. *United States v. Vazquez*, 8:18-cr-597-TPB-JSS (M.D. Fla. 2023) (quoting *In re Grand Jury*, 478 F.3d 581, 585 (4th Cir. 2007)). The

---

[3] Federal Tax Practitioner Privilege (IRC § 7525): The Internal Revenue Code (IRC) offers a privilege for communications regarding tax advice between a taxpayer and a federally authorized tax practitioner, which includes accountants. This privilege mirrors the attorney-client privilege.

Subpoena used vague and all-encompassing language to request, among others, "**All** books, papers, records, correspondence, **or other data**…" (Subpoena at 1).[4] The Subpoena defined "RECORDS" as "books, papers, documents, data, **or other objects**."[5] (Id). The overly vague and broad request linked with the lack of temporal limitations in the Subpoena itself renders it unreasonable and oppressive, if not impossible, to make the required production. Even if Goldhawk is able to make the production, the produced documents will be so voluminous and burdensome to inspect that it will challenge meaningful inspection and the ability of the Defendant to properly review and evaluate the materials in an effort to prepare for trial. This court should therefore grant the motion to quash or issue a protective order preventing disclosure.

### C. *Fisher distinguished and the act of production*

We concede, *Fisher v. United States* held that a client's privilege under the Fifth Amendment was not violated by the enforcement of the subpoena

---

[4] The Subpoena compels the production of "All books, papers, records," bank statements, records used in preparing tax returns, copies of federal and state tax returns, records showing gross income and expenses, and others. (Ex. 1 at 2) The Subpoena does not specific the time period within which the subpoenaed documents fall, since Goldhawk has been working with Liburdi for four years, and Goldhawk may also have records transferred from Liburdi's previous accounting services, the resulting production will be so voluminous and unfairly burdensome.

[5] The phrase "other objects" is ipso facto not merely vague, it is "overly vague."

8

duces tecum served on his lawyer, because no compulsion was involved, and the subpoenaed documents were not testimonial in nature. 425 U.S. 391 (1976).[6] However, *Fisher* departed significantly from long-standing common law principles. In *Boyd v. United States*, 116, U.S. 616, 623 (1886), the Supreme Court held that a "compulsory production of the private books and papers of the owner of goods sought to be forfeited in such a suit is compelling him to be a witness against himself, within the meaning of the Fifth Amendment to the Constitution." Similarly, in *United States v. Calandra*, 414 U.S. 338, 346 (1974), the Supreme Court held a grand jury subpoena may not violate a valid privilege, "whether established by the Constitution, statutes, or the common law … a grand jury may not compel a person to produce books and papers that would incriminate him." Fisher casts doubt on long-standing jurisprudence; its validity was also questioned by the concurring opinion:

> The court's treatment in the instant case of the question whether the evidence involved here is within the protection of the privilege is, with all respect, most inadequate. The gaping hole is in the omission of any reference to the taxpayer's privacy interests and to whether the subpoenas impermissibly invade those interests. The observation that the "account's workpapers are not the taxpayer's" and "were not prepared by the taxpayer," ante, at 409, touches on matters relevant to the taxpayer's expectation of privacy, but do not of themselves determine the availability of the privilege.

---

[6] In *Fisher v. United States*, 425 U.S. 391 (1976), where a subpoena duces tecum served on the taxpayer's attorney compelled production of the client's records and documents, although the Supreme Court denied the client/taxpayer's Fifth Amendment claim, it recognized the standing of the client to challenge the subpoena served on his attorney.

*Fisher v. United States*, 425 U.S. 391, 427 (1976) (Brennan, J., concurring).

Applying the same rationale, Justice Brennan, dissenting in *Andresen v. Maryland*, 427 U.S. 463, 486 (1976) (Brennan, J., dissenting), wrote that business records are an extension of a person's activities, they fall within the zone of privacy, and therefore the Fifth Amendment privilege attaches. The undersigned respectfully urges this court to consider Justice Brennan's clear and cogent reasoning in his concurring opinion in Fisher, that to determine if the subpoenaed documents are privileged, the court should consider if the individual resisting production had a reasonable expectation of privacy with respect to the evidence, and take into account "the degree to which the paper holder has sought to keep private the contents of the papers he desires not to produce." *Fisher*, 425 U.S. at 425 (Brennan, J., concurring). As discussed above, the subpoenaed documents are necessarily in the possession of Goldhawk for the sole purpose of preparing and then filing Federal tax returns accurately and timely, as required by law.[7] The documents submitted to Goldhawk, and the business records prepared by Goldhawk in relation to the service rendered, are privileged under Florida law. Those documents were already in the possession of Goldhawk before the grand jury indictment. While

---

[7] In the State of Florida, Liburdi is not obliged to file individual income tax return, since there is no individual income tax in Florida. However, certain corporations and possibly at least some of the allegedly related entities in this case may well have an obligation to file tax returns in Florida.

**10**

there is no accountant-client privilege attached under Federal Law, Liburdi reasonably expected those documents to be kept in strict confidence and to be privileged under Florida law and the Fifth Amendment. As argued above, this court should adopt FL Stat § 90.5055 in federal cases, because applying the court's balancing test, Florida has an interest in the confidentiality of the subpoenaed documents that outweighs the Government's interest in these documents.

It is clear that *Fisher* and subsequent cases deviated from the long-held principles in Boyd; however, the holding in Fisher and the cases noted below represent at least some level of reservation. Even Fisher acknowledged that "When the client himself would be privileged from production of the document, either as a party at common law or as exempt from self-incrimination, the attorney having possession of the document is not bound to produce." 425 U.S. at 404. As discussed earlier, if the documents sought were subpoenaed directly from Liburdi, they would be privileged under the Fifth Amendment. Liburdi, here, and his agent, Goldhawk, for the purpose of preparing accurate Tax Returns, reasonably expected those documents to be kept in strict confidence. Therefore, Liburdi enjoys the protection of his Fifth Amendment privilege, and the subpoenaed documents should be protected.

Even conceding that those documents are not privileged themselves, the act of producing the subpoenaed materials may be self-incriminating. The law recognizes this valid concern:

> The act of producing documents in response to a subpoena may have a compelled testimonial aspect. The act of production itself may implicitly communicate statements of fact. By producing documents in compliance with a subpoena, the witness would admit that the papers existed, were in his possession or control, and were authentic.

*United States v. Hubbell*, 530 U.S. 27, 36 (2000).

In *Hubbell*, the Supreme Court reasoned that the Fifth Amendment privilege extends not only to answers that would support a conviction, but also embraces "those [documents] which would furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime." 530 U.S. at 38 (citing *Hoffman v. United States*, 341 U.S. 479, 486, 95 L. Ed. 1118, 71 S. Ct. 814 (1951)).

If the subpoena compels the subject to identify sources of information and to produce those sources, the collection and production of the materials demanded is tantamount to answering a series of interrogatories asking a witness to disclose the existence and location of particular documents; thus, the Fifth Amendment privilege extends to such a scenario. 530 U.S. at 41. See generally *United States v. Doe*, 465 U.S. 605 (1984). In short, if the contents of the subpoenaed records are not privileged, the act of producing the documents at issue can be privileged. The Subpoena at issue here

"COMMANDED" the subject to appear and testify before the grand jury, and compels Goldhawk to produce the aforementioned, voluminous documents. The act of production itself may reveal incriminating information,[8] which would be otherwise privileged and protected pursuant to the Fifth Amendment and Liburdi's privacy interests. Even assuming arguendo the documents themselves are not privileged, the act of production is necessarily self-incriminating. Therefore, especially here, where part of the Government's Bank Fraud Indictment is that the Defendant Liburdi failed to disclose he was the beneficial owner of the IBOs, the Subpoena should be quashed, and this court should issue a protective order preventing disclosure of the subpoenaed documents.[9]

### C. The subpoena at issue (Ex. 1) is misused, inappropriate, and improperly motivated (last link)

A grand jury can be used to investigate whether a defendant committed crimes not covered in the indictment (Here, the alleged Tax Fraud), but cannot be used "solely or even primarily" to gather evidence of an already indicted Bank Fraud against an already indicted defendant. *United States v. U.S.*

---

[8] Incriminating with regard to *who in fact* is the beneficial owner of the entities, and this will flow into an evidentiary deficit in the Government's Bank Fraud case.

[9] See Footnote 8, *supra.*

*Infrastructure, Inc.*, 576 F.3d 1195, 1214 (11th Cir. 2009). See also *United States v. Stein*, 2021 WL 3129628, at 6 (S.D. Fla. July 23, 2021), "It is improper to utilize a Grand Jury for the sole or dominating purpose of preparing an already pending indictment for trial." It is improper to use the grand jury for the purpose of preparing an already pending indictment for trial. *Beverly v. United States*, 468 F.2d 732, 743 (5th Cir. 1972).[10] The prosecution may not use the grand jury for the primary purpose of strengthening its case on a pending indictment or as a substitute for discovery. *United States v. Beasley*, 550 F.2d 261, 266 (5th Cir. 1977).[11] In other words, "the Government's dominant purpose" when using the grand jury's subpoena authority cannot be to collect evidence for trial or retrial of any pending charges, so investigations on separate matters cannot be "used merely as a 'cloak' to cover the Government's 'discovery dagger.'" *In re Grand Jury Proc.*, 896 F.2d 1267, 1278 (11th Cir.)

This rule is widely adopted across jurisdictions. "Once a criminal defendant has been indicted, the Government is barred from employing the grand jury for the 'sole or dominant purpose' of developing additional evidence

---

[10] See *Bonner v. Prichard,* 661 F.2d 1206 (1981), decisions of the former Fifth Circuit, as existed on September 30, 1981, are binding precedents in the Eleventh Circuit. See also *United States v. Brown*, 342 F.3d 1245 (2003), the Eleventh Circuit adheres to the precedents from the former Fifth Circuit.

[11] See Footnote 8, *supra.*

14

against the defendant." *United States v. Bros. Constr. Co. of Ohio*, 219 F.3d 300, 314 (4th Cir. 2000) (quoting *United States v. Moss*, 756 F.2d 329, 332 (4th Cir. 1985)). A defendant seeking to quash a post-indictment grand jury subpoena "has the burden of showing that the Government's use of the grand jury [is] improperly motivated." *United States v. Leung*, 40 F.3d 577, 581 (2d Cir. 1994). "Once a defendant has put forward such allegations, the Government must 'come forward with evidence of specific grand jury activity in connection with the… investigation,' and thereby show that the subpoena was not motivated by an improper purpose." *United States v. Calk*, 87 F.4th 164, 186 (2d Cir. 2023), cert. denied, 145 S. Ct. 144 (2024) (quoting *Leung*, 40 F.3d at 582). Then, "[t]he defendant… has the burden of showing that the government's explanation was a pretext for abusing the grand jury process by 'utiliz[ing] a [g]rand [j]ury for the sole or dominating purpose of preparing an already pending indictment for trial.'" Id. (quoting *United States v. Punn*, 737 F.3d 1, 6 (2d Cir. 2013)).

A district court has discretion to take appropriate remedial action where it finds grand jury abuse in the form of an improper sole or dominant purpose. See *United States v. Brinkman*, 739 F.2d 977, 980 (4th Cir. 1984). If it is demonstrated that "the disputed grand jury subpoenas were issued for the sole or dominant purpose of aiding the Government in preparing for trial," the

**15**

district court may quash the subpoena. *Leung*, 40 F.3d at 581. When determining whether the Government is using a grand jury for the sole or dominant purpose of preparing an already pending indictment for trial under this burden-shifting framework, courts look to various factors, such as the "timing of the subpoena" as well as the scope of the investigation. *United States v. Holzendorf*, 2011 WL 8948769, at *3 (M.D. Fla. Dec. 20, 2011), *report and recommendation adopted*, 2012 WL 3853579 (M.D. Fla. Sept. 4, 2012) ("The timing of a subpoena 'casts significant light on its purposes.'") (quoting *United States v. Raphael*, 786 F. Supp. 355, 359 (S.D.N.Y.1992)); *United States v. Alred*, 144 F.3d 1405, 1413 (11th Cir. 1998) (examining the "proximity in time" between the subpoena and the trial to determine its purpose); *US Infrastructure, Inc.*, 576 F.3d at 1214 n. 6 (considering whether the continued grand jury investigation "involved the 'same issues' that the first trial, and defendant's testimony at that trial, 'centered on.'") (quoting *United States v. Kovaleski*, 406 F. Supp. 267, 271 (E.D. Mich. 1976)). See generally *In re Grand Jury Subpoena Duces Tecum, 767 F.2d 26 (2d Cir 1985)*, indeed, as the Second Circuit has held, the court can find that such abuses may have occurred on the basis of the timing alone. The Second Circuit quashed a subpoena "as an abuse of the grand jury process" on the grounds that its timing indicated that it had primarily been issued for the purpose of

**16**

collecting additional evidence for a pending indictment. *Id*. at 29-30. Although courts have "often been reluctant to go beyond a simple rebuke[,]" such subpoenas should be quashed "if the rule [barring use of the grand jury to gather evidence to prepare for trial of an already pending indictment] is to have any meaning[.]" *Id*. at 30.

Based on a review of the limited and sparse discovery materials provided thus far, it is clear that the government began its investigation in this case in 2022. According to the Indictment, *sub judice*, the alleged offenses were completed "in or around May 8, 2023," which was 17 months before the indictment was returned in December 2024. (PACER Doc. 1) The government had more than ample time to conduct its investigation. But, it appears that the government issued this post-indictment grand jury subpoena in order to conduct additional, impermissible pretrial evidence gathering in connection with the Bank Fraud allegations in the pending indictment under the guise of an alleged Tax Fraud investigation. The fact that the Government failed to seek a grand jury subpoena against Goldhawk specifically until January 15, 2025, one month after the unsealing of the initial indictment, when it could have done so any time before suggests that it issued this post-indictment subpoena mainly to strengthen its evidence in the Bank Fraud or Money Laundering allegations in the pending indictment against Liburdi. See *In re*

**17**

*Grand Jury Subpoena Duces Tecum*, 767 F.2d 26, 29 (2d Cir 1985) (finding that an abuse of the grand jury occurred at least in part because the prosecution had failed to issue a grand jury subpoena until January 29, 1985 despite knowing that the sought-after "evidence might bear on matters relevant to the grand jury's investigation" since October 10, 1984[.]"); *Calk*, 87 F.4th at 186-87 (showing that "the timing of the grand jury subpoena of [the witness] raised serious questions regarding its validity" since the prosecution subpoenaed him only when a trial date for a conspiracy claim was approaching despite having identified him as a potential witness twenty months before, and since it "had already drafted the superseding indictment charging [the defendant] with conspiracy… prior to the subpoena.").

Moreover, as noted earlier, the subpoenaed documents include "All books, papers, records, correspondence, or other data" concerning services Goldhawk provided to Liburdi and certain named entities. (Ex. 1 at 1.) The Subpoena also required Goldhawk to produce "Bank statements, cancelled checks, deposit receipts, wire transfers, financial statements" furnished by Goldhawk, Liburdi, or the named entities, and used overly broad language to request records showing "gross income received and expenses incurred by" Liburdi and the named entities. (Id at 2.) As argued above, those subpoenaed documents are necessarily in the possession of Goldhawk and are related to

18

Liburdi and the named business entities' business practices. Those documents most likely contain incriminating links in the chain of evidence privileged under the Fifth Amendment.

For the Government, the subpoenaed documents and materials, if produced, can serve no purpose other than to aid the Government in preparing for trial and to gather and bolster its evidence at trial against Liburdi, an already indicted defendant. As noted on page.7-8, *supra,* the Grand Jury Subpoena does not specify the time period within which the subpoenaed documents fall, which renders the production excessively and unfairly burdensome, if not impossible. The Subpoena also lacks a clear end date, which leaves the Defendant and the undersigned in confusion, and unfairly prejudices the undersigned's effort to properly prepare for trial and afford the Defendant a fair and reasonable opportunity to respond to the Government's request.

### D. The law is not static

Just as Fisher softened the ground for Boyd, common law principles evolve and shift over time. See *Helvering v. Hallock*, "stare decisis is a principle of policy and not a mechanical formula of adherence to the latest decision, however recent and questionable, when such adherence involves collision with a prior doctrine more embracing in its scope, intrinsically

**19**

sounder, and verified by experience." 309 U.S. 106, 119 (1940). In *Trop v. Dulles*, 356 U.S. 86, 100 (1958), in its discussion of the Eighth Amendment, the Supreme Court stated "the words of the Amendment are not precise, and that their scope is not static. The Amendment must draw its meaning from the evolving standards of decency that mark the progress of a maturing society." As Justice Scalia stated in *Ring v. Arizona*, 536 U.S. 584, 611 (2002) (Scalia, J., concurring), he has "acquired new wisdom," and concurred in support of a change in the common law. "Wisdom too often never comes, and so one ought not to reject it merely because it comes late." *Ring*, 536 U.S. at 614 (Breyer, J., concurring) (citing *Henslee v. Union Planters Nat. Bank & Trust Co.*, 335 U.S. 595, 600, 93 L. Ed. 259, 69 S. Ct. 290 (1949) (Frankfurter, J., dissenting))

The current application of the Fifth Amendment privilege is, according to Justice Brennan, "with all respect, most inadequate." 425 U.S. at 427 (Brennan, J., concurring). "Considering violations of privacy, human dignity, and the right of individuals to maintain their autonomous sphere, it is hard to distinguish between the obligation to make statements and subjecting our bodies and personal documents to intrusive inspections." Rinat Kitai-Sangero, *The Protection of Free Choice and the Right to Passivity: Applying the Privilege Against Self-Incrimination to Physical Examinations and Documents'*

**20**

*Submission*, 29 Wm. & Mary Bill Rts. J. 271, 302 (2020), https://scholarship.law.wm.edu/wmborj/vol29/iss2/2 Compelled speech and compelled production of documents are similar in terms of their self-incriminating nature. "Compelled speech might produce statements that would not have been available otherwise. Similarly, an obligation to create documents is equivalent to an obligation to make statements and to generate new evidence." *Id*. at 312

The holding in Fisher undermines the Fifth Amendment privilege traditionally afforded to one's autonomy. To apply the Fifth Amendment, Fisher asks that one look only "to the act itself" and "ignore that the documents themselves are incriminatory in content." Richard A. Nagareda, *Compulsion "To be a Witness" and the Resurrection of Boyd*, 74 N.Y.U. L. Rev. 1575, 1601 (1999). To compel a person to "be a witness" is to compel that person "to give evidence," and it is the compulsion of the production of evidence, whether in the form of speech or production of documents, that violates the Fifth Amendment. *Id*. at 1603

The undersigned respectfully urges this court to apply a principle more consistent with the underlying spirit of the Fifth Amendment. In *Marchetti v. United States*, 390 U.S. 39, 53 (1968), the court held that "The central standard for the privilege's application has been whether the claimant is

**21**

confronted by substantial and 'real,' and not merely trifling or imaginary, hazards of incrimination." The subpoenaed documents are necessarily in the hands of Goldhawk; those documents are records of Liburdi and other business entities, which will likely involve incriminating information that would otherwise be protected under the Fifth Amendment. Furthermore, the last link doctrine, "protects a client's identity when disclosure of that identity would disclose other, privileged communications (e.g., motive or strategy) and when the incriminating nature of the privileged communications has created in the client a reasonable expectation that the information would be kept confidential." *In re Grand Jury Proceedings*, 896 F.2d 1267, 1273 (1990). Similarly, here, the Subpoena at issue seems to be an effort to shore up missing links in the Government's Bank Fraud case. The Subpoenaed documents here, constitute the last link in the chain of evidence between Liburdi and the business entities; it is an improper effort to bolster the subject matter of the bank fraud indictment.

Liburdi faces the very real and imminent hazard of incrimination absent a protective order preventing disclosure or an order quashing the subpoena. The Subpoena is an unabashed effort by the Government to strengthen its Bank Fraud case and provide the "last [or at least significant missing] links" in the chain of evidence. The undersigned respectfully moves this court to

**22**

quash the Subpoena, or to issue an order preventing disclosure of the subpoenaed documents.

## **GOVERNMENT'S POSITION**

AUSA Duso opposes this Motion to Quash or for Protective Order, but agrees to confer regarding the scope of the Subpoena.

## **CONCLUSION[12]**

WHEREFORE, for the foregoing reasons, Liburdi respectfully moves this Honorable Court to enter an Order quashing any post-indictment grand jury subpoenas issued by the Government compelling production of records and evidence concerning Liburdi and the named entities, and to issue a protective order preventing disclosure of the documents called for by the Grand Jury Subpoena, numbered 2022R01686-167, that are in the possession of Goldhawk Financial PLLC.

Respectfully Submitted,

By: /s/ Joel Hirschhorn
JOEL HIRSCHHORN
Florida Bar #104573

**Hirschhorn Law Office**
Attorney for Defendant
4230 East Towne Blvd., #319
Madison, WI 53704-3704
Telephone: (305) 389-4726
joel@hirschhorn.law

---

[12] Liburdi acknowledges this court has denied the Motion for Protective Order filed on behalf of Frank Carbone (PACER Doc. 83) and various corporate entities (PACER Doc. 89), but maintains those orders are not binding on movant Liburdi.

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on September 17, 2025, I electronically filed

the foregoing with the Clerk of Court by using the CM/ECF system, which will

send a notice of electronic filing to all parties of record.

<u>/s/Joel  Hirschhorn</u>

JOEL  HIRSCHHORN

# Exhibit 1

2022R01686 - 167

AO 110 (Rev. 06/09) Subpoena to Testify Before a Grand Jury

# UNITED STATES DISTRICT COURT
### for the
## Middle District of Florida

### SUBPOENA TO TESTIFY BEFORE A GRAND JURY

To:
Goldhawk Financial PLLC
Attn: Custodian of Records
7274 Catalina Isle Dr.
Lake Worth, FL 33467

**YOU ARE COMMANDED** to appear in this United States district court at the time, date, and place shown below to testify before the court's grand jury. When you arrive, you must remain at the court until the judge or a court officer allows you to leave.

| Place: United States District Court - Tampa<br>801 North Florida Ave., 4th Floor, Room 4A, Tampa, FL 33602 | Date and Time:<br><br>January 29, 2025 08:00 AM |
|---|---|

You must also bring with you the following documents, electronically stored information, or objects *(blank if not applicable)*:

SEE ATTACHMENT FOR ADDITIONAL DETAILS. Please note the date and time are subject to change.

In lieu of personal appearance before the Grand Jury, documents may be returned to the agent listed on the attachment before the scheduled appearance. An executed Declaration of Authentication of Business Records (form enclosed) must be returned with responsive records. PLEASE PROVIDE RECORDS IN ELECTRONIC FORMAT.

If you have any questions regarding this subpoena, please contact the agent identified on the attachment.

Date: January 15, 2025

*CLERK OF COURT*

Elizabeth M. Warren
*Signature of Clerk or Deputy Clerk*

The name, address, e-mail, and telephone number of the United States attorney, or assistant United States attorney, who requests this subpoena, are:

Adam Duso, AUSA
400 North Tampa St., Ste. 3200  Tampa, FL 33602
(813) 274-6000
adam.duso@usdoj.gov

2022R01686 - 167

## ATTACHMENT TO SUBPOENA ISSUED TO:

**Goldhawk Financial PLLC**
Attn: Custodian of Records
7274 Catalina Isle Dr
Lake Worth, FL 33467

## PLEASE PROVIDE IN ELECTRONIC FORMAT

Please provide all information and records related to the following entities, whether held jointly or severally or as trustee, fiduciary, custodian, executor, or guardian:

Individual:

| Name | SSN |
|---|---|
| Daniel Vincent Liburdi | 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 |

Entities:

| Name | EIN |
|---|---|
| SWIPE WYRE MEDIA LLC | 862085384 |
| XMY ENTERPRIZE LLC | 331455443 |
| GREEN BRICK MEDIA LLC | 812152762 |
| GGM GROUP FAMILY OFFICE LLC | 661045374 |
| POMPEA MOUNTAIN TR | 936574018 |
| GGM GROUP LLC | 660963678 |
| POSEIDON YACHT CHARTERS LLC | 854079334 |
| MERCHANT CORNER LLC | 815056061 |
| TIME MANEGEMANT PLUS LLC | 842475973 |
| MERCHENT MANAGER LIMITED LLC | 842308682 |
| ENDLESS VIEWZ LLC | 660969047 |
| POWER PLAY MEDIA LLC | 661026119 |
| COASTAL CAPITAL INVESTMENTS GROUP | 990409726 |

RECORDS:  The term "Records" is defined as books, papers, documents, data, or other objects.  Such records may include but not be limited to:

- All books, papers, records, correspondence, or other data in your possession, custody, or control concerning any accounting services, consulting services, and/or the preparation of Federal or state tax returns.

2022R01686 - 167

- Bank statements, cancelled checks, deposit receipts, wire transfers, financial statements, correspondence or e-mails furnished by or on behalf of the above-named individuals/entities for the preparation of state and federal income tax returns;

- Records used in or created for or during the preparation of federal and state income tax returns or bookkeeping consisting of, but not limited to, QuickBooks, Google Sheets, work-papers, schedules, analyses, summaries, notes, papers, questionnaires, memoranda, and correspondence used or prepared by you relative to the preparation of returns;

- Copies of federal and state income tax returns, payroll tax returns, state sales tax returns and amendments to such returns, including draft returns;

- Records showing items of gross income received and expenses incurred by the above-named individuals/entities; and

- Billing records, including records showing the dates and types of services rendered, client account cards, billing invoices, records reflecting the dates, amounts, purpose and method of all payments, and all correspondence.

If you have any questions regarding this subpoena, please contact **Special Agent Spencer Macy, Internal Revenue Service, at 727-318-3870 or Spencer.Macy@ci.irs.gov.**

In lieu of personal appearance before the Grand Jury, documents may be returned, along with a completed and executed Declaration of Authentication of Business Records (form enclosed), to **Special Agent Spencer Macy, Internal Revenue Service, 9450 Koger Blvd., Suite 101, St. Petersburg, FL 33702.**

2022R01686 - 167

2110 First Street, Suite 3-137
Fort Myers, Florida 33901
239/461-2200
239/461-2219 (Fax)



300 North Hogan Street, Suite 700
Jacksonville, Florida 32202
904/301-6300
904/301-6310 (Fax)

35 SE 1st Avenue, Suite 300
Ocala, Florida 34471
352/547-3600
352/547-3623 (Fax)

**U.S. Department of Justice**
*United States Attorney*
*Middle District of Florida*
—————
Main Office
400 North Tampa Street, Suite 3200
Tampa, Florida 33602
813/274-6000
813/274-6358 (Fax)

400 West Washington Street, Suite 3100
Orlando, Florida 32801
407/648-7500
407/648-7643 (Fax)

---

Custodian of Records

Re:    Certificate of Authentication of Business Records

Dear Sir/Madam:

We write to ask your assistance regarding records you are providing to the government pursuant to the attached subpoena request. Under the Federal Rules of Evidence, a business record of regularly conducted activity can be self-authenticated without the need for a foundation witness if accompanied by a written declaration of the records custodian or other qualified person that the record: (1) was made at or near the time of the occurrence of the matters set forth in the record by a person with knowledge of those matters or from information transmitted by a person with knowledge of those matters; (2) was kept in the course of the regularly conducted activity; and (3) was made by the regularly conducted activity as a regular practice.

Accordingly, in order that you or a representative from your company will not have to appear to authenticate the records produced, we ask that you complete a *Declaration of Authentication of Business Records* in substantially the same form as the document attached hereto. Pursuant to the Federal Rules of Evidence, we must provide the declaration to opposing counsel in advance of relying upon it. We, therefore, request that you provide the declaration contemporaneously with the record production.

Thank you for your cooperation. Please call us if you would like to discuss this matter.

Attachment

2022R01686 - 167

# DECLARATION OF AUTHENTICATION OF BUSINESS RECORDS

I, _____, am the custodian of records or am otherwise
                    (name)
qualified to authenticate the records of _____
                                                          (company or business)
I have provided the following records to the United States pursuant to Subpoena No.

_____.

List of records provided:

_____

_____

_____

_____

_____

I certify that the above records are business records of regularly conducted activity and that I am a custodian or am otherwise qualified as to the authentication of these records. I also certify that the records: (1) were made at or near the time of the occurrence of the matters set forth in the records by a person with knowledge of those matters or from information transmitted by a person with knowledge of those matters; (2) were kept in the course of a regularly conducted activity; and (3) were made by the regularly conducted activity as a regular practice. I make these claims under penalty of perjury.

☐ **Please check if appropriate**

    Additionally, such records were generated by _____ electronic process or system that produces an accurate result, to wit:

    The records were copied from electronic device(s), storage medium(s), or file(s) in the custody of _____, in a manner to ensure that they are true duplicates of the original records; and

    The process or system is regularly verified by _____, and at all times pertinent to the records certified here the process and system functioned properly and normally.

The address and phone number where I can be reached are:

_____

_____

_____


_____          _____
Printed Name                        Signature

_____
Date