**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**UNITED STATES OF AMERICA,**

**Plaintiff,**

**vs.**

**CASE NO. 8:24-cr-564-KKM-TGW**
**May 19, 2026**
**Tampa, Florida**
**9:59 a.m. - 12:11 p.m.**

**DANIEL LIBURDI,**

**Defendant.**

---

**TRANSCRIPT OF CHANGE OF PLEA**
**BEFORE THE HONORABLE NATALIE H. ADAMS**
**UNITED STATES MAGISTRATE JUDGE**

---

Proceedings recorded via courtroom digital audio recording and transcribed by Official Court Reporter using computer-aided transcription.

---

**HOWARD W. JONES, RDR, RMR, FCRR**
FEDERAL OFFICIAL COURT REPORTER
801 NORTH FLORIDA AVENUE, 13TH FLOOR
TAMPA, FLORIDA 33602
(813) 301-6158

**APPEARANCES:**

**For the Government:** WHITNEY MACKAY, ESQ.
ROSS ROBERTS, ESQ.
Assistant U.S. Attorney
400 N. Tampa Street, Suite 3200
Tampa, Florida 33602
813/274-6000

**For the Defendant:** JOEL HIRSCHHORN, ESQ.
4230 East Towne Blvd., Ste. 319
Madison, WI 53704
305-389-4726

STUART HYMAN, ESQ.
1520 E. Amelia St.
Orlando, FL 32803
407-896-0536

**I N D E X**

| | PAGE |
|---|---|
| CERTIFICATE OF REPORTER: | 81 |

* * * * * * * * * * *

**(Court called to order.)**

**P R O C E E D I N G S**

**THE COURT:** All right. Good morning.

Ms. Reaves, would you please call the case?

**DEPUTY CLERK:** Yes, Your Honor. Case number 8:24-cr-564, United States vs. Daniel Liburdi.

**THE COURT:** Thank you. Would counsel please state their appearances?

**MS. MACKAY:** Good morning, Your Honor. Whitney Mackay on behalf of the United States.

**THE COURT:** Good morning.

**MR. HIRSCHHORN:** Good morning, Your Honor. Joel Hirschhorn on behalf of the defendant.

**MR. HYMAN:** Stuart Hyman on behalf of Mr. Liburdi as well.

**THE COURT:** Good morning. And good morning to you, Mr. Liburdi. I understand you wish to plead guilty today pursuant to a plea agreement.

Is that correct?

**THE DEFENDANT:** Yes, Your Honor, that's correct.

**THE COURT:** All right. Please stay standing and Ms. Reaves will place you under oath.

**DEPUTY CLERK:** Please raise your right hand. Do you solemnly swear or affirm under penalty of perjury that the answers you'll give to questions propounded by this

Court will be the truth, the whole truth, and nothing but the truth?

**THE DEFENDANT:** Yes, I do.

**DEPUTY CLERK:** Please state your name for the record.

**THE DEFENDANT:** Daniel Liburdi.

**DEPUTY CLERK:** Thank you.

**THE COURT:** All right. You can be seated. The first question I have is there's a note in the plea agreement that indicates this plea is not valid unless it is approved by DOJ-Tax.

What can the government tell us about that?

**MS. MACKAY:** Your Honor, this plea agreement as it's written has been fully approved by DOJ-Tax.

**THE COURT:** All right. So, the government will be bound by each part of the plea agreement, is that correct?

**MS. MACKAY:** That is correct, Your Honor.

**THE COURT:** All right, thank you.

**MR. HIRSCHHORN:** Your Honor, I've also spoken to the DOJ attorney, Gregory Tortulla, T-O-R-T-U-L-L-A, I believe, but I'll confirm it, regarding this plea agreement, DOJ Tax Division.

**THE COURT:** All right. And it's your understanding that it has been confirmed?

**MR. HIRSCHHORN:** Yes. Actually, he assisted me in

getting it changed to the original plea agreement.

**THE COURT:** All right. Thank you very much.

Has the United States complied with the CVRA?

**MS. MACKAY:** Yes, Your Honor.

**THE COURT:** All right. Mr. Liburdi, generally in court you have a right to remain silent and that's because whatever you say can be used against you to determine your guilt, to determine your sentence, for alien removal proceedings, or for any other reason.

However, if you wish to plead guilty, you will have to answer questions about what's happened and about yourself and you will be making statements that can be used against you and waiving your right to remain silent in this proceeding.

Do you understand that?

**THE DEFENDANT:** Yes, Your Honor.

**THE COURT:** You can remain seated. Additionally, you have just taken an oath to tell the truth. And, so, if you say something that is untrue or if you leave out something important, you could be prosecuted for additional crimes including perjury, making a false statement, and obstruction of justice.

And, so, it's very important that if my questions are unclear, if you need to ask a question or if you need to speak to your attorney before you answer, that you raise

your hand and let me know. I will make sure that you have whatever time and information you need so that we can be certain -- you can be certain that you are answering each of my questions truthfully and completely.

All right?

**THE DEFENDANT:** Yes, Your Honor.

**THE COURT:** Any questions so far?

**THE DEFENDANT:** No, Your Honor.

**THE COURT:** All right. All right. Thank you. It is certainly your right to plead guilty, but before the court -- do we need to take a recess or -- I just don't want him to be distracted.

**MR. HYMAN:** Just for one moment.

**THE COURT:** Sure.

(Pause in proceedings.)

**MR. HIRSCHHORN:** Your Honor, that form that has been presented, we're waiving or requesting rather that the Court recommend that the Presentence Investigation be waived. And the government's position is it takes no position. So, to the extent that -- I didn't look at the form. It just has (inaudible) -- but Mr. Liburdi --

**THE COURT:** So, there are two forms here. We will really only discuss one today. But one of the forms does give his consent to be interviewed by the Probation Office for Pretrial Services -- or for the sentencing report. I

imagine that Judge Mizelle will want a probation report before sentencing, but you can file a motion and ask her to waive it if that's what you would like to do.

**MR. HIRSCHHORN:** Well --

**THE COURT:** I've got a guess about how that motion will be ruled on, but I will leave it to her discretion.

**MR. HIRSCHHORN:** Under the circumstances, could I ask the Court to return that form consenting to the Presentence Investigation Report until I file the motion with the Court?

**THE COURT:** Yes, I'm happy to do that.

**MR. HIRSCHHORN:** And for the record, I wanted to correctly spell Greg Tortella. T-O-R-T-E-L-L-A. Department of Justice Tax Division, Trial Division Chief or Acting Chief. Thank you.

**MR. HYMAN:** I apologize for the interruption.

**THE COURT:** No. If you need a recess at any point or if you need a recess at any point, just raise your hand and let me know and we will take a recess.

You have the right to plead guilty, but before the Court can accept a guilty plea, it must be certain that you understand your rights and the rights that you give up by pleading guilty, that you understand the charge against you and the penalties that it carries, and that you are making that decision freely, knowingly and voluntarily.

And part of that is ensuring that you are in the right frame of mind to make this decision. So, I'm going to ask you questions about all of those things. Some will be personal, but they aren't intended to embarrass you. They are intended to make sure that it's fair to hold you to a decision that you make today.

Mr. Liburdi, how old are you?

**THE DEFENDANT:** 37 years old.

**THE COURT:** How far did you go in school?

**THE DEFENDANT:** Graduated with a bachelor's degree in finance.

**THE COURT:** Comfortable reading and writing?

**THE DEFENDANT:** Yes, ma'am.

**THE COURT:** The document that now accuses you of a crime is called a superseding information.

Do you have a copy there with you?

**THE DEFENDANT:** I do not have a copy in front of me at the moment.

**MS. MACKAY:** Your Honor, I have a copy.

**MR. HIRSCHHORN:** So do I.

**THE COURT:** All right. Have you got a copy now?

**THE DEFENDANT:** I do, Your Honor.

**THE COURT:** And have you previously read that?

**THE DEFENDANT:** I have, Your Honor.

**THE COURT:** And with the help of your attorneys,

did you understand it?

**THE DEFENDANT:** Yes, Your Honor, I do.

**THE COURT:** What about your plea agreement? Did you read that yourself?

**THE DEFENDANT:** I did, Your Honor.

**THE COURT:** And with the help of your attorneys, did you understand it?

**THE DEFENDANT:** I do.

**THE COURT:** In the last 24 hours, have you had any alcohol?

**THE DEFENDANT:** No, ma'am.

**THE COURT:** Have you had any drug or medicine, prescription or non-prescription, legal, illegal, anything at all?

**THE DEFENDANT:** No, ma'am.

**THE COURT:** All right. Have you ever been diagnosed with or treated for any kind of mental or emotional condition?

**THE DEFENDANT:** I have, Your Honor.

**THE COURT:** All right. And can you tell me about that?

**THE DEFENDANT:** I've recently sought therapy for prescription medicine.

**THE COURT:** Okay. So, addiction, substance abuse and treatment? And I think perhaps on the Court's order.

Is that right? Is there anything else?

**THE DEFENDANT:** Yes, Your Honor.

**THE COURT:** Is there -- is there any other mental or emotional condition with which you have been diagnosed or for which you have been treated?

**THE DEFENDANT:** Not as of yet, Your Honor.

**THE COURT:** All right. Is there a condition like that for which you believe you could use treatment?

**THE DEFENDANT:** Possibly, Your Honor.

**THE COURT:** And can you tell me about that?

**THE DEFENDANT:** I could not give you an accurate diagnosis myself, but I have seen several therapists and I believe possibly if we did further therapy that maybe there would be a diagnosis perhaps.

**THE COURT:** And, again, the reason that I ask is because it's important to understand if you're in the right state of mind to make this decision.

So, again, these questions are not meant to embarrass anyone, but I would like to know if there's anything that you're experiencing mentally or emotionally that would make it difficult for you to understand me, to concentrate, to think clearly or to make an important decision today.

Is there?

**THE DEFENDANT:** Not at the moment, Your Honor.

**MR. HIRSCHHORN:** Your Honor, could I assist the Court? The defendant is currently in treatment with a Dr. Aza Oxner, O-X-N-E-R.

**THE COURT:** I'm having a hard time hearing you, Mr. Hirschhorn. Can you perhaps maybe speak more into the microphone?

**MR. HIRSCHHORN:** I thought I was.

**THE COURT:** Let's try that again, yeah.

**MR. HIRSCHHORN:** : Okay. It's on. In treatment with Dr. Aza Oxner, O-X-N-E-R, for dependence on prescribed drug. In addition, he has demonstrated various stages of depression and I suspect that's part of his treatment, although maybe not necessarily.

So, ultimately, I am going to be at sentencing requesting the Court recommend RDAP.

**THE COURT:** All right. Thank you, Mr. Hirschhorn.

So, Mr. Liburdi, is that consistent with your concern that perhaps you suffer from depression?

**THE DEFENDANT:** Yes, Your Honor.

**THE COURT:** All right. Sometimes when people are depressed, they make decisions impulsively or they make decisions that are not in their best interest because they do not feel invested in their best interest, for example.

So, let me ask you: Is your decision to plead guilty one that you made suddenly or is it a decision that

you have held and maintained for a while?

**THE DEFENDANT:** It's a decision I've held and maintained for quite some time.

**THE COURT:** All right. Mr. Hirschhorn, can I ask you, do you have any concerns that the decision to plead guilty is being made impulsively?

**MR. HIRSCHHORN:** I have serious concerns about the plea, but not with the use of the word impulsively.

May I be heard on that?

**THE COURT:** All right.

**MR. HIRSCHHORN:** Probably won't sit well, but I need to get it on the record, because I've been practicing law too long and at this stage of my career, I would not feel comfortable -- maybe at any stage, but certainly not now without saying it.

**THE COURT:** Mr. Hirschhorn, can I ask you to approach the podium so I can make sure I can hear what you've got to say?

**MR. HIRSCHHORN:** Sure.

Your Honor, is that better?

**THE COURT:** Yes, sir.

**MR. HIRSCHHORN:** Better for me, too, actually.

This is a very difficult plea for me to wholeheartedly recommend to my client. But for the -- the three-year statutory cap on this plea, I would not encourage

my client to enter into this plea because the underlying charges of bank fraud in the indictment were a no-loss to the bank, a serious question as to whether or not there was a bank -- a fraud on the bank because the bank knew.

The business that the defendant engaged in, the e-commerce business that the defendant engaged in, it was a usual and customary course of business in the e-commerce industry. We had a banking expert prepared -- and in the credit card business prepared to so testify.

I do not believe the government -- I'm not talking about the present prosecutors, Mr. Roberts and Ms. Mackay. But the prior prosecutor was definitely not prepared in this case. But for a co-defendant's co-counsel asking for a continuance, this case would have been tried in February when the government was not prepared.

I respectfully suggest the case was under-investigated. We spent a substantial amount of time reviewing hundreds of thousands -- I had a team reviewing hundreds of thousands of documents, all of which corroborated the bank fraud defense, that there was no bank fraud and the government knew -- the bank knew exactly who was the person behind all these business accounts that were used to deposit proceeds from the sale of e-commerce credit card product, all of which were legal products. Hair loss, weight loss, nutritional, some CBD products, but there was

no suggestion of improper or illegal product.

There was no -- and this was what's really odd about it, there was no FTC or other regulatory action before this indictment. But the bottom line is, had we proceeded on the bank fraud case, the best I could tell my client was he had a 50-50 chance because you never know what a jury is going to do.

And if he lost, his sentencing guidelines would be in excess of 137 months, perhaps even more by the time Probation finished tacking on sophisticated means and taking away the three points for acceptance of responsibility by virtue of going to trial, what defense lawyers refer to euphemistically as the trial tax.

So, I could not recommend that to the client, even though I felt in my heart of hearts that the government had a serious problem proving its case, its bank fraud case beyond a reasonable doubt. And in any event, we had an effective defense. We were ready for trial in February. I had over 40 witnesses that were potential witnesses. At least 3 or 4, I don't remember now, expert witnesses who were disclosed and over 200 defense exhibits.

As it turns out, those defense exhibits, if this plea is accepted, will be the basis, I think, for the Defendant's cooperation if the government is interested in pursuing cases against these independent sales organizations

and banks.

The threat of the tax investigation -- you were not part of this, Judge, because --

**THE COURT:** I was part of adjudicating your attempts to quash the subpoenas associated with the tax investigation.

**MR. HIRSCHHORN:** No, no. But -- I'm sorry. What I meant was -- yes, you were. You're right.

**THE COURT:** We've met before.

**MR. HIRSCHHORN:** You're right. And much to my chagrin, the Defendant's decision resulted in those being declared moot. But you were not involved in the case or in court every time Mr. Duso came to court and threatened a tax investigation and a tax indictment and a superseding indictment and it never happened. I knew the government was bluffing.

**THE COURT:** You're pleading to a tax fraud charge, right?

**MR. HIRSCHHORN:** That's correct. Because of this three-year statutory cap. That is the only reason quite candidly.

**THE COURT:** Well, perhaps it would be important to discuss -- and I appreciate that you are -- you feel very passionate about these issues and you feel passionate about your position on your client's defense on the bank fraud.

And, of course, this plea represents an acquittal of a bank fraud charge essentially. The government has -- has chosen to abandon those.

But what I will say, Mr. Hirschhorn, and perhaps it's worth talking about now, is I will not accept a plea that is a best interest plea. We don't accept that in federal court. And, so, if the facts that support the charges -- or the charge to which he intends to plead guilty are not admitted to, I will not accept the plea.

And, so, it is worth noting to the extent that we're saying, hey, we're only pleading guilty because we like the deal, I will be asking your client if he is pleading guilty because he is, in fact, guilty of this crime. And if he's not prepared to say that, we -- I mean, we could probably save each other about an hour.

**MR. HIRSCHHORN:** I understand that at least as well as you do, Judge. I've probably handled 100 guilty pleas in federal court. I suspect you've handled substantially more. But if there were -- if this were a nolo contendere plea or an Alford plea, I wouldn't have a problem. But this District does not permit either a nolo or an Alford plea.

**THE COURT:** That's right.

**MR. HIRSCHHORN:** Now, if I could also just finish.

Yes, we are pleading to a tax investigation and,

yes, I was finally able to get access to the DOJ attorney who was supervising/approving this plea deal. And as a result of my conversation with him, he agreed to transfer the year that we were pleading to from 2002, which is what the government insisted on, to 2023.

Why? Because I believe that in 2021 and in 2022, my evidence would have shown that, in fact, the Defendant was substantially in compliance with the United States Virgin Islands tax credit and the Federal Code. And therefore he was entitled to do -- to take the tax credits that he did.

In 2023, which is the year we are now pleading to, I have less enthusiasm about my ability to adequately defend that because of certain factors known to me, not known to the government, but should be known to the government had the government done its investigation down in the Virgin Islands, which it hadn't.

We are being asked to plead guilty to a false statement in a tax return, namely that we failed to disclose that the income was not being, quote, sourced in the Virgin Islands. That's not accurate. We did disclose it. I've got the transcript.

**THE COURT:** Well, again, I'm not going to take a plea to something that's inaccurate.

**MR. HIRSCHHORN:** Well, let me -- but the point is,

there are other issues with the 2023 year where the government could make a case.

So, I have real heartburn over this. I have discussed it substantially with my client, but I can tell you that there is no doubt that capping this to three years bird in hand is a substantially better situation for my client than going to trial on a bank fraud case that's 50/50.

So, there are also some promises made that are not directly in the plea agreement that will need to be addressed when you ask the Defendant if there were any promises made.

**THE COURT:** All right. Because there sure is a paragraph in that plea agreement that says that's the entire agreement.

**MR. HIRSCHHORN:** Right, I have. And there's not an issue with them. They're just not in the plea agreement.

**THE COURT:** Well, it sounds like we've got a few obstacles to getting through this, so we'll --

**MR. HIRSCHHORN:** I can imagine this is probably the last guilty plea I'll handle in Federal court, so why would it be uncomplicated?

**THE COURT:** Well, it's great to go out with a bang. Grand finale.

**MR. HIRSCHHORN:** Not at (inaudible) but perhaps.

**THE COURT:** All right. So, my question was whether there was a concern that this decision was being made impulsively or whether it was one that you believed had been made and sustained.

And Mr. Hirschhorn, do you have any concerns that this decision is being made impulsively by your client given the representations that perhaps he is struggling with some mental health challenges?

**MR. HIRSCHHORN:** No, this is not an impulsive decision.

**THE COURT:** All right. Thank you.

**MR. HIRSCHHORN:** There's no -- no, we have discussed this ad nauseam.

**THE COURT:** All right.

**MR. HIRSCHHORN:** And Mr. Liburdi has discussed it even more with co-counsel, Mr. Hyman.

**THE COURT:** All right. Thank you.

So, Mr. Liburdi, are you feeling clear-headed here today?

**THE DEFENDANT:** Yes, Your Honor, I am.

**THE COURT:** And in your own words, can you tell me the purpose of today's hearing?

**THE DEFENDANT:** To plead guilty to the charge before me.

**THE COURT:** All right. Any concerns about

competency, Ms. Mackay?

**MS. MACKAY:** None, Your Honor. Thank you.

**THE COURT:** Mr. Hirschhorn, any concerns about competency?

**MR. HIRSCHHORN:** No.

**THE COURT:** All right. I'm a United States Magistrate Judge. There are two judges assigned to your case. The other judge is a District Judge. It is the District Judge who has the power to accept or reject a guilty plea and it is the District Judge who would sentence you if you are found guilty.

You have every right, if you would like, to have this hearing before the District Judge. There's no penalty for asking for that. It makes no difference to the Court which you choose. If you ask for that, you will certainly get it. It is your right to have it.

I have here a document that says you knew you had the right to go before the District Judge, but that you wish to give up that right and to have the hearing with me today instead.

Let me ask you, before you signed that, did you have enough time to read that and talk to your attorneys about it?

**THE DEFENDANT:** Yes, Your Honor.

**THE COURT:** Do you need any more time to think

about it or talk to your attorneys about it?

**THE DEFENDANT:** No, Your Honor, I do not.

**THE COURT:** All right. Would you still like to waive your right to go before the District Judge for your change of plea hearing?

**THE DEFENDANT:** Yes, Your Honor, I would.

**THE COURT:** All right. I will find that that waiver is being made knowingly and voluntarily and I will accept it.

I want to tell you about some other rights that you have and some of them you've discussed with the Court before. You do have the right at every stage of these proceedings, in court and out, to either represent yourself or to be represented by an attorney. And that's through direct appeal, which is a complaint to a higher court if you don't like something that happens in this court.

If you can afford an attorney, it appears you can, you have the right to hire the one of your choosing, but you should know you would have a right to an attorney even if you could not afford one or even if at some point you became unable to afford one. And that's true even if you decided to plead not guilty and to take your case to trial.

You would always be entitled to an attorney if you wanted one, whether or not you had the means to afford one.

Do you understand that right?

**THE DEFENDANT:** Yes, Your Honor, I do.

**THE COURT:** Any questions about it?

**THE DEFENDANT:** No, Your Honor.

**THE COURT:** All right. Additionally, you do not have to confess to any crime, which is what pleading guilty is. You have a right to require the prosecutor to try to meet its constitutional burden to prove your guilt beyond a reasonable doubt before you could be convicted of anything.

If you wished to do that, you would be entitled to a public trial; that is, it would have to happen in the open, not in secret. And a speedy trial, meaning it would have to happen soon.

The Court would bring in 12 people from the community called jurors. Together, they would form the jury. And these would be people who had no information about the case, who knew no one involved in the case, and who had no special feelings about the issues in the case.

The government would have to present its evidence in open court in front of the jury, but also in front of you and your attorneys. And you, through your attorneys, could challenge the government's evidence, ask questions about it, make arguments about why it wasn't good enough.

If the government presented witnesses, they would have to testify in front of you. And you, through your attorneys, could challenge them, ask them questions. We say

cross-examine them. You would also have the right, if you wished, to present your own evidence, your own witnesses, your own exhibits. If you knew someone who had information about the case who did not want to come to court, you could use the Court's subpoena power to make them come to court and to testify.

You would also have the right, if you wished, to testify on your own behalf; that is, tell your side of the story to the jury. But as I mentioned before, you have the right to remain silent. And, so, if you did not want to testify, no one could make you. And if you chose to remain silent, the jury would be told it could not hold that against you. It would also be told that it was never your burden to prove your innocence. Instead, you would be presumed innocent. And the burden would always be on the government to have to prove your guilt.

And in fact, you could not be found guilty of any crime unless at the end of the case every single one of the 12 jurors believed that the evidence in the case proved your guilt beyond any reasonable doubt they might have.

Do you understand that this is your right to take the case to trial?

**THE DEFENDANT:** Yes, Your Honor, I do.

**THE COURT:** Do you understand that by pleading guilty you give up that right and there will be no trial?

**THE DEFENDANT:** Yes, Your Honor, I do.

**THE COURT:** You may have defenses to the accusations the government makes against you, but if you plead guilty, you will give up your right to present those defenses.

Do you understand that?

**THE DEFENDANT:** Yes, Your Honor.

**THE COURT:** You might believe the way the government gathered evidence against you was wrong or illegal, but by pleading guilty, you give up the right to challenge the way the government gathered its evidence against you.

Do you understand that?

**THE DEFENDANT:** Yes.

**THE COURT:** Do you understand that by pleading guilty, you are saying you did, in fact, commit this crime? And if you do that, the District Judge will almost certainly convict you, and the next hearing in this case will be your sentencing.

Do you understand that?

**THE DEFENDANT:** Yes, Your Honor, I do.

**THE COURT:** Any questions about that?

**THE DEFENDANT:** No, Your Honor.

**THE COURT:** The crime to which you intend to plead guilty is a felony, a serious crime. And the reason that's

important is because in addition to any sentence it may carry, being convicted of a felony will cost you valuable civil rights. It will cost you the right to vote, to run for office, to serve on juries, to possess firearms and ammunition, to get certain business licenses.

And if you are not a United States citizen and convicted of a felony, you should expect that after any prison sentence, you will be deported and removed from the United States and denied re-admission and citizenship in the future.

Do you understand these consequences of pleading guilty to a felony?

**THE DEFENDANT:** Yes, Your Honor, I do.

**THE COURT:** All right. You indicated before that you read the superseding information and the plea agreement.

Let me ask you, did you have enough time to discuss with your attorneys the charge or the various charges and the evidence in this case?

**THE DEFENDANT:** Yes, Your Honor, I did.

**THE COURT:** Did you ask them all your questions?

**THE DEFENDANT:** Yes, Your Honor.

**THE COURT:** Did they answer them?

**THE DEFENDANT:** They did.

**THE COURT:** Did they do everything you asked them to do?

**THE DEFENDANT:** They did.

**THE COURT:** Was there anything you thought they should have done that they did not do?

**THE DEFENDANT:** No, Your Honor.

**THE COURT:** Are you satisfied with the way that they have represented you?

**THE DEFENDANT:** Yes, Your Honor.

**THE COURT:** Did you do everything you could to assist them in your defense?

**THE DEFENDANT:** I did.

**THE COURT:** All right. I know that you have a copy of the superseding information there. I know you've gone over it with your attorney, but I would like to go over it with you myself.

This alleges that you committed tax evasion in violation of 26 United States Code Section 7206 around September 16, 2024, in this District by knowingly and willfully making and subscribing under penalty of perjury an IRS Form 1040 for the tax year 2023 that you knew was not true and correct as to every material matter.

Specifically, it misrepresented the domestic source of your reported income causing an underreporting of the amount of taxes he owed for 2023 by $9,881,118.

If this case were to go to trial, the government would have to prove certain facts beyond a reasonable doubt

before you could be convicted of this crime.

We call those facts the elements of the crime. And the elements of this crime are:

First, you made or caused to be made an IRS Form 1040 for the year -- for the tax year 2023.

Second, the IRS Form 1040 contained a written declaration that it was made under penalty of perjury.

Third, when you made or helped to make the IRS Form 1040, you knew it contained false material information.

Fourth, when you did that, you intended to do something you knew violated the law.

And fifth, the matter in the IRS Form 1040 related to a material statement.

Do you understand the charge against you and what the government would have to prove beyond a reasonable doubt before you could be convicted?

**THE DEFENDANT:** Yes, Your Honor, I do.

**THE COURT:** Any questions about that?

**THE DEFENDANT:** No, Your Honor.

**THE COURT:** If you are convicted of this crime, you could go to prison for as long as three years. You could be fined as much as -- I know the statute itself says $100,000, but I think it is $250,000.

Does the United States believe the more limited language applies? Your office has taken two different

positions on this and I guess it doesn't -- go ahead.

**MS. MACKAY:** I apologize to interrupt. I did speak with Supervisor Pizzo yesterday and we do think that the $100,000 cap does apply in this case.

**THE COURT:** Okay. So, there are two different statutes that govern the potential fine in this case. One is a broader, more general statute that indicates there is a $250,000 fine associated with this type of felony, but the one in the actual statute indicates $100,000.

My belief is, to the extent a larger fine is not sought or imposed, it may become largely immaterial, but the United States says it does not intend to seek a fine greater than $100,000. The plea agreement says it's $100,000 or twice the gross gain or loss. I believe that's incorrect. I don't see language in the statute that would provide for a fine that is twice the amount of the gain or loss.

Do you disagree, Ms. Mackay?

**MS. MACKAY:** Your Honor, I don't know exactly where that language came from. I'm happy to find it, but I do know that this was a plea agreement that was agreed upon between the defense and DOJ Tax and that fine amount was in the plea agreement that they signed. This case has a lot of extraneous facts that aren't contained necessarily within the plea agreement itself and I don't feel comfortable waiving that section considering that that is the exact

language that DOJ tax approved for this particular case.

**MR. HIRSCHHORN:** Your Honor, I don't think that that's an appropriate penalty. And, yes, regrettably, I did not catch that, nor did Mr. Hyman because the government had represented that it would not be seeking a fine. And recognizing that the government's recommendation is not binding on the Court --

**THE COURT:** Well, you know what is binding on the Court? That statute, which I do not believe applies a fine that is twice the gross gain or loss. And, so, while the agreement may be between the parties, I'm going to advise him that his maximum fine here is $100,000.

**MR. HIRSCHHORN:** Your Honor, I just wanted to say, I suspect it came from a prior plea agreement which was to an underlying misprision of a felony or 371 or something else or maybe the bank fraud.

**THE COURT:** My guess is that it is also imported from another statute. You are certainly not waiving any position you may have, but I am going to advise him as to what I think the law provides here and I don't believe it provides for that alternative fine, although it does provide for a variety of financial penalties, which we'll talk about as well.

**MS. MACKAY:** Thank you, Your Honor.

**THE COURT:** Thank you, Ms. Mackay.

You must also pay a $100 special assessment, which is a court fee. You may be required to serve up to three years of supervised release. Supervised release is like a term of probation that someone serves after and in addition to a prison sentence.

You must also pay restitution. Here, your plea agreement provides that that restitution is a repayment to the IRS in the amount of $34,846,381.

There are no forfeiture notices as a part of the sentence itself, but we will talk about your agreement to make certain forfeitures which are not statutorily mandated as part of a sentence here.

But do you understand all the aspects of a sentence associated with this crime?

**THE DEFENDANT:** I do, Your Honor.

**THE COURT:** Any questions about it?

**THE DEFENDANT:** No, Your Honor.

**THE COURT:** All right. You have been charged --

**MR. HIRSCHHORN:** Excuse me, Your Honor. If I may have a moment?

**THE COURT:** Yes, sir. Of course.

(Pause in proceedings.)

**THE COURT:** All right. You are charged with a felony. In our country, before you can be charged with a felony, the United States must go before a grand jury and

ask the grand jury if they believe there is sufficient evidence to formally charge you in a document called an indictment.

A grand jury is a group of 23 people who meets in secret. 16 must be present to hear a case. 12 must vote yes before you can be indicted. And they must vote yes, essentially, that there was probable cause presented to them to believe that you have committed the crime exactly as charged.

Here, although you were originally charged by indictment, the present charging document is an information. That's a different way of charging. It's just the United States Attorney's Office indicating what they think you did to violate the law. They've not gone before a grand jury.

You have a right under Rule 7(b) of the Federal Rules of Criminal Procedure to waive your right to be charged by indictment. That is, to waive your right to require the United States Attorney's Office to go before a grand jury before a charge -- a felony charge against you can be levied. But that rule says that you have to do that after you've been informed of the charge and the penalties and your rights and you have to make that decision in open court.

I have now told you about the charge and the penalties and your rights, and so I am going to ask you in

open court -- I do have a copy of your waiver of indictment, but now I ask you in open court, do you still wish to waive your right to be charged by a grand jury?

**THE DEFENDANT:** Yes, Your Honor, I do.

**THE COURT:** All right. And did you have enough time to talk to your attorneys about that right and that waiver?

**THE DEFENDANT:** I have.

**THE COURT:** All right. I will find that waiver is being made knowingly and voluntarily and I will accept and execute it.

All right. The United States Sentencing Guidelines apply in your case. Have you talked to your attorneys about those?

**THE DEFENDANT:** I have, Your Honor.

**THE COURT:** In that case, I won't go into too much detail about them, but there are a couple of things I want to make sure you know before you make any decision. The first is that as we sit here today, no one, not even an experienced attorney, can tell you with certainty what your sentence or even your guidelines range will be. And that is because the Court has not decided that yet. The Court needs more information to do that and will rely in part on a report written by the United States Probation Office.

I know that your attorneys wish to forgo that

process, but imagining that the Court may not take you up on that, I'll let you know what that process is.

The United States Probation Office will review the evidence in the case and they may, with your consent, or without your consent, may not, interview you and they will write a report all about your life and about what's happened here and they will include in that report what they think the guidelines range should be and why.

Before it goes to the District Judge, you and your attorneys and the attorneys for the government can review the report. And you may agree with all of it, or if there's something with which you disagree, you can file an objection, a disagreement, and provide any additional argument or evidence or opinion you think they missed.

They will review that and they may revise the report. Whether or not they revise the report, a version of the report will go to the District Judge and, of course, you'll be copied along with anything that you submitted for consideration. In addition, you can submit things directly to the District Judge before sentencing. She will review all of that before sentencing.

And then at sentencing, before she decides the guidelines or your sentence, she will ask both sides if they have anything that they'd like to say or present on those topics and she will consider those things as well.

But what that means is you will not find out your sentence or even your guidelines range until you are in your sentencing hearing. I mention that because it is completely normal and frankly expected that before someone makes a decision about whether to plead guilty, they would have talked to their attorneys to try to guess their sentence or their guidelines range.

And that is completely normal. But what you need to know is, no matter how experienced your attorneys, that guess could be wrong. And if it is wrong and if the District Judge picks a sentence or a guidelines range that is different or higher than what you or your attorneys expect or hope for, that will not be a reason you can take back your guilty plea if you enter it today.

Do you understand that?

**THE DEFENDANT:** Yes, Your Honor, I do.

**THE COURT:** Any questions about that?

**THE DEFENDANT:** No.

**THE COURT:** Additionally, you should know that the guidelines range is just a recommendation to the Court. The Court can sentence you higher or lower than your range. And if that happens, if you are sentenced differently than your guidelines range, that is likewise not a reason you would be allowed to withdraw your guilty plea if you enter it today.

Do you understand that?

**THE DEFENDANT:** Yes, Your Honor, I do.

**THE COURT:** Any questions about that?

**THE DEFENDANT:** No, Your Honor.

**THE COURT:** I understand you've entered into a plea agreement with the United States.

Do you have a copy there?

**THE DEFENDANT:** I do.

**THE COURT:** Would you please look at that and confirm for me that you put your initials on each page and your signature on the last?

**THE DEFENDANT:** Just a moment.

**THE COURT:** Sure.

**THE DEFENDANT:** You want me to confirm that these are my initials at the --

**THE COURT:** I want you to confirm that you put those initials on each page and that signature on the last.

**THE DEFENDANT:** Yes, Your Honor, I confirm.

**THE COURT:** Before you did that, did you read every word of that agreement?

**THE DEFENDANT:** I have.

**THE COURT:** Did you make sure that you understood it?

**THE DEFENDANT:** Yes, ma'am.

**THE COURT:** And did you understand that by initialing and signing it, you agreed to be bound by every

part of it?

**THE DEFENDANT:** Yes, Your Honor.

**THE COURT:** All right. In that case, I don't intend to go over every word of the plea agreement today, but if I skip over a part that you want to talk about, or if I talk about a part you think we should talk about more, just raise your hand and let me know. We will talk about whatever part of this agreement you want for as long as you need so that you can be certain you understand it.

All right?

**THE DEFENDANT:** Yes, ma'am.

**THE COURT:** I intend to skip the first three paragraphs which discuss what we have already discussed; that is, the charge, the elements, and the penalties. And I intend to begin with paragraph 4 on page 2, which is called Counts Dismissed.

Here -- just one second. Let me look at something. Sorry. We also talked about paragraph 4, which is Indictment Waiver.

So, paragraph 5 is Counts Dismissed. Here, the United States agrees that it will dismiss the underlying indictment against you at sentencing. That is document 1 in the present case.

Do you understand that paragraph?

**THE DEFENDANT:** Yes.

**THE COURT:** Any questions about it?

**THE DEFENDANT:** No.

**THE COURT:** Paragraph 6 is called No Further Charges. Here, the United States agrees that if the Court accepts the plea agreement, the Federal prosecutors in this District will not charge you with any additional Federal crimes related to this conduct so long as it knew about the conduct at the time it executed the plea agreement.

Do you understand that paragraph?

**THE DEFENDANT:** Yes, Your Honor.

**THE COURT:** Any questions about it?

**THE DEFENDANT:** No, Your Honor.

**THE COURT:** All right. We have already discussed restitution. Paragraph 8 discusses the guidelines. As I mentioned before, the District Judge does not have to sentence you within the guidelines. She can go higher or lower. But here, the prosecutor agrees to recommend to the District Court that she sentence you within those guidelines.

Do you understand that?

**THE DEFENDANT:** Yes, Your Honor.

**THE COURT:** Any questions about it?

Yes, Mr. Hirschhorn.

**MR. HIRSCHHORN:** Your Honor, the Defendant understands, of course, that the guidelines will be in

excess of the statutory maximum. So I -- it's impossible for him --

**THE COURT:** So, while the adjusted guidelines range might originally exceed a statutory maximum, I believe you will find in that Pretrial Report that you love so much, that they will reduce the guidelines range to reflect the statutory maximum.

**MR. HIRSCHHORN:** I've seen that before. I know that. I just want to make sure the Defendant knows so he's not concerned that the maximum that can be imposed is three years.

**THE COURT:** I believe that will change the guidelines range itself, but to the extent that there is any concern that the government will recommend a sentence higher than the statutory maximum, that's not what this means. They -- they cannot recommend anything higher than the statutory maximum.

All right. The next paragraph discusses acceptance of responsibility. Here, the government agrees that so long as it does not receive any new information between now and then suggesting that you are not, in fact, accepting responsibility, at sentencing the government agrees to recommend to the District Judge that she lower your offense level by 2. You recall looking at the guidelines chart and it's the -- your criminal history at

the top and your offense level on the side.

Do you remember looking at that?

**THE DEFENDANT:** Yes, Your Honor, I do.

**THE COURT:** Okay. And so reducing your offense level changes where your guidelines are. Here, they agree to recommend that the Court reduce your offense level by 2. And, again, if they don't learn any new information suggesting that you are not accepting responsibility, and if your offense level begins at a level 16 or higher, they will ask the District Court to reduce it by a third level.

(Pause in proceedings.)

**THE COURT:** What you should do is if you have questions or if you need to talk to your attorneys, you should feel very free to take whatever time you need when you need it to do that.

**THE DEFENDANT:** Yes, Your Honor. I guess I had a question.

**THE COURT:** Sure.

**THE DEFENDANT:** In the superseding information, the proposed amount is $9,881,118. On this table here on page 5 for the description of the offense, it says base offense tax loss more than $25 million, but less than $65 million.

**THE COURT:** So we are not yet at that chart, which is the United States' own estimate and not a promise at all

of what your guidelines will be or even what they will recommend. That provision, which is -- which is the next one, just says their back of the napkin, what they think it is right now. That provision, in my opinion -- obviously, I'm not a party to the plea agreement, is essentially meaningless because they're not agreeing to recommend it and they're not saying the Court will adopt it. They're saying, here's what we calculate.

Now, if I had to read between the lines, I would suggest that your restitution amount, which is approximately $34 million, reflects some kind of calculation that they are using for this -- this guideline calculation. That restitution amount does appear far greater than the amount of tax exposure they indicate you obscured.

But as far as paragraph 10 goes, which is what I understand your question to be, that is not you agreeing to that guidelines calculation. Again, the way the guidelines will be identified is that pre-trial report will give a basis for calculating the guidelines based on evidence that they review and, if you are interviewed, what you tell them.

They will calculate a guidelines range. They will put in the math, right? They will show you the provisions of the sentencing guidelines they are using to get to their recommended guidelines range. And, again, you can agree with that or you can disagree with that. You can put in

your own calculation and arguments and evidence supporting what you think makes sense. And, ultimately, it will be the District Judge at sentencing who will decide, who will decide which of these provisions applied, will decide what proof has been given. It's a different standard of proof at sentencing, of course.

But this paragraph 10 chart that is put in here is nothing you are agreeing to recommend. It's nothing they are agreeing to recommend.

Does that --

Yes, sir?

**MR. HIRSCHHORN:** No, no. I just wanted-- when you're done, I wanted to just --

**THE COURT:** Yeah, you should -- when it comes to advising your client, you should feel free to interrupt me. You can just raise your hand and go for it.

(Pause in proceedings.)

**THE COURT:** All right. So, if we could circle back to Paragraph 9, which talks about acceptance.

So, there so long as they believe that you are accepting responsibility, they don't learn any new information between now and then that tells them you actually are not accepting responsibility, they agree that at your sentencing hearing they will recommend that the District Judge lower your offense level by 2 points. And

again, this, this lowers your sentencing guidelines recommendation.

Again, if they don't receive any information suggesting it would be inappropriate and your offense level begins high enough; that is, a level 16 or higher, the United States agrees that it will recommend the Court take off a third level for acceptance of responsibility.

However, under this agreement, you acknowledge that only the United States can ask for that third level and if they do not ask for it, you will not challenge it.

Do you understand this paragraph?

**THE DEFENDANT:** Yes, Your Honor, I do.

**THE COURT:** Any questions about it?

**MR. HIRSCHHORN:** Your Honor, the only question is that Mr. Ross is aware of the fact that at this point we do not intend to submit a financial affidavit and he is advised in that-- and we've told the client that he's advised that if we don't submit the financial affidavit, we're going to lose a point, that one point. And the way I calculate it, it doesn't make any difference because the guidelines are going to be higher than the statutory cap. You may be wondering why we would not submit a financial affidavit.

**THE COURT:** I've got some guesses.

**MR. HIRSCHHORN:** Pardon me?

**THE COURT:** I've got some guesses.

**MR. HIRSCHHORN:** Well, you see, the government has, as you will learn, also agreed that Mr. Macy, the agent, upon payment of the $34 million and acceptance of this plea agreement is going to close this file and not make a referral to the civil folks.

Now, as I will discuss later with respect to promises made, that may not necessarily have an impact on the civil division of IRS, because the criminal division cannot bind the civil division.

And so this plea -- that's part of the problem. This plea has significant ramifications for potential civil tax fraud, civil tax negligence, civil penalties and civil interest.

So, that's the basis for not --

**THE COURT:** Okay. So, we're going a little off script because I know that you do have a paragraph in here in which you do agree to submit a financial disclosure within 30 days of signing the plea. That's paragraph 5 on page 16.

And, so, I sort of leave to the United States Attorney's Office whether that's a material provision. Obviously, Anita Cream would say it absolutely is, but it -- I share your discomfort to the extent that apparently we have a plea agreement that doesn't represent the agreement.

But for purposes of paragraph 9, which is where we

are now, it's eating an elephant, one bite at a time, the -- the importance here is it sounds like you shouldn't be expecting that third level, which your attorney believes is of no moment.

All right. Any questions about that paragraph.

**THE DEFENDANT:** No, Your Honor.

**THE COURT:** All right. Paragraph 10, which is the one we were just discussing, is only the prosecutor's guess about what your exposure could be here. They do not promise that they will recommend that these guidelines provisions apply. They do not promise that they will recommend this offense level is the appropriate total adjusted offense level. They do not -- certainly do not promise the Court will adopt any of these and you do not, in turn, agree that this is right or that you will recommend it either.

So, this is not a promise at all. This is just you wanted to see their math and they showed it to you.

Do you understand this?

**THE DEFENDANT:** Yes, Your Honor.

**THE COURT:** Any questions about it?

**THE DEFENDANT:** No, Your Honor.

**THE COURT:** All right. The next paragraph, paragraph 11 -- and frankly the entire discussion up to page 9 frankly discusses potential cooperation with the government. Here, you promise to tell the government

anything they ask, you promise to testify against whomever they want, you promise to give them any evidence you might have. And in exchange they do not promise that they will ask the Court to lower your sentence.

They promise that they'll think about what you did and they will consider whether they believe that it substantially assisted them. If they believe it substantially assisted them, then and only then will they ask the Court to lower your sentence.

But you could tell them everything you know and do whatever they ask, and they could decide, this didn't help us that much, and they could decide not to ask the Court to lower your sentence.

Or they could decide it did help them and they could ask the Court and the Court could say, no, they're not going to lower your sentence.

In any of these events, you don't have an ability on that basis to take back your guilty plea or any of your promises in the plea agreement.

Do you understand that?

**THE DEFENDANT:** Yes, Your Honor, I do.

**THE COURT:** Any questions about it?

**THE DEFENDANT:** No, Your Honor.

**THE COURT:** Additionally, if in cooperating, you tell them something that's untrue or if you leave out

important information, they can take away all of their promises to you. They can reinstate the underlying indictment. They could prosecute you for making a false statement, for obstruction of justice and you still could not withdraw your guilty plea or your promises in the plea agreement.

Do you understand that?

**THE DEFENDANT:** Yes, Your Honor.

**THE COURT:** Any questions about it?

**THE DEFENDANT:** No.

**THE COURT:** All right. We've discussed paragraph 14 under which this plea agreement requires final DOJ-Tax approval. It's been proffered to me by officers of the Court that DOJ-Tax has in fact approved it and so this plea agreement is considered binding.

The next paragraph discusses forfeiture of assets. It's important to note a few things about this. The first is forfeiture is not a mandatory part of a sentence for a tax evasion charge. This forfeiture is agreed to and you have under this agreement and as part of the consideration for this agreement, agreed to give to the government all of the following.

Let me just check one thing.

And you should note that forfeiture is not in any way something that offsets a fine or a restitution amount

owed. And under this plea agreement, there -- there are some circumstances in which you can get remission. You could get what you forfeit applied to your restitution, but under this plea agreement, that is specifically prohibited. This is an entirely separate monetary obligation. You agree to forfeit the real property located at 195 Chocolate Hole, U.S.V.I. Or, you have the option under this plea agreement to instead pay $2.5 million within 90 days of the Court's acceptance of the plea if the Court does accept it.

You have also promised to give to the government -- and you promise to give all of this property to the government whether or not it's in your name, whether it's in the name of one of your businesses, a third-party nominee, you promise to give it to them and to sort of do what you need to do in terms of paperwork and administration and cooperation to ensure that title passes to them.

This includes the real property located at 269 North Hibiscus Drive in Miami.

At 205 North Hibiscus Drive in Miami Beach.

Both of those Miami Beach.

A 2021 Ferrari 812.

A 2021 Ferrari F8.

A 2023 Land Rover Range Rover.

And various money from seized bank accounts.

$1,067.76 from a JPMorgan Chase account in -- in

GGM Group Family Office LLC's name.

$219,120.09 from a JPMorgan Chase account held in your name.

$50,760.03 from a JPMorgan Chase account in Green Brick Media LLC's name.

Approximately $131,790.49 from Merchant Commercial Bank in your name.

Approximately $11,770.12 from a Merchant Commercial bank account in the name of GGM Group, LLC.

And you essentially say, yes, this is not part of my criminal sentence, but I acknowledge that this is civilly subject to forfeiture as the proceeds of bank fraud.

And, so, the United States can take that without giving you notice. And you will not file claims, you will withdraw your claims. You do not require notice of their forfeiture actions whether they be administrative or judicial.

They have your consent to go forward and take those actions in other manners. And you agree to withdraw any claims that you made to the vehicles except for the Ferrari 812, and to the bank accounts and any claims that you made in the names of XMY Enterprise, LLC; GGM Group Family Office, LLC; Green Brick Media, LLC; and GGM Group, LLC.

You are essentially waiving all of your right to

challenge the forfeiture of those. You are agreeing to cooperate in the forfeiture of those. You are withdrawing any claims to any of this property.

If you want to buy the U.S.V.I. property, the $2.5 million, that is supposed to be done by a cashier's check to Suzanne -- or not to Suzanne Nebesky, to the United States Customs and Border Protection delivered to -- and you can deliver it to Nebesky at the U.S. Attorney's Office.

**MR. HIRSCHHORN:** Your Honor, before we leave the forfeiture section, just with respect to items 2 and 3, the 269 North Hibiscus and the 205 North Hibiscus, just put -- want to put on the record that Ms. Nebesky and I are discussing resolutions not -- we're not backing away from the forfeiture, but we're discussing mechanics and resolutions of that. She's been very helpful. No promises made --

**THE COURT:** Well, this doesn't in any way, right, change the parties' ability to continue to negotiate within the civil forfeiture attempts. What it does is prevents you from challenging those attempts. You can try to settle out, you can try to resolve that, but what you are saying is you are withdrawing all of your claim, you will help them take that property, unless they agree to something else as far as the civil forfeiture and administrative forfeiture.

**MR. HIRSCHHORN:** Your Honor, the record should

reflect that --

**THE COURT:** Welcome Mr. Roberts? Mr. Roberts has now come to represent the United States in Ms. Mackay's place.

**MR. ROBERTS:** Yes. Thank you, Your Honor. Ross Roberts from the United States.

**THE COURT:** You missed a lot.

Well, I -- something tells me we've got more to come, so don't -- don't feel sad about it.

All right. One thing that we are going to talk about in a sec -- well, we'll get there. We'll get there.

All right. Do you have any questions about forfeiture, Mr. Liburdi?

**THE DEFENDANT:** Yes, Your Honor. On page 13, I just wanted to confirm. I believe the government agrees to release the lis pendens on the property located at 101 North Hibiscus Drive, Miami Beach, Florida 33139.

**THE COURT:** That's right. So, that is not one of the properties that you agreed to accept forfeiture of or that you were required to waive any claim to. They do not intend to seek forfeiture of that unless you do not make your full $34 million whatever in restitution within 6 months of sentencing. Then it appears they do intend to go after that property to intend to satisfy that restitution obligation in accordance with the F.D.C.P.A.

Additionally, you agree here that you will essentially hold harmless, acquit, discharge anyone in the United States, any agencies, any officers, any state or local law enforcement agencies or officers associated with any of these forfeitures. You're not going to try to sue them. You're not going to -- you're not going to go after them for their role in the forfeitures and seizures.

Any questions about this part?

**THE DEFENDANT:** No, Your Honor.

**THE COURT:** All right. We've already discussed restitution. That's $34 million whatever. The special assessment, that's the $100, and the fine, which is the $100,000.

Yes, sir?

**MR. HIRSCHHORN:** Before we leave that, Judge, I'd just like to clarify. Obviously, the $100 and all time limitations start from when the plea is accepted. And I mean -- by that, I mean by the District Court, or is the $100 due today within 10 --

**THE COURT:** Oh. Sorry. Just for the special assessment, that is within 10 days of the change of plea hearing and that's indicated on page 15 of the plea.

**MR. HIRSCHHORN:** No, I know that. But your change of plea is a recommendation to the Court.

**THE COURT:** I hear you. I'm reading your

agreement. This isn't my agreement. This is the agreement you all wrote. So, this says: Within 10 days of the change of plea hearing --

**MR. HIRSCHHORN:** So, I mean, obviously we're not really concerned about the $100. That'll be paid even though I think it ought to be paid only after the District Judge accepts the plea, if the District Judge does accept your recommendation, if that's your recommendation. I am more concerned, however, about other timetables. Now, one says after sentencing, that's fine, and we'll come back to the other timetable.

**THE COURT:** Yeah. So, I also think that it is procedurally complicated to require the $100 within 10 days of the change of plea hearing only because I'm not sure the Clerk of Court has an order that makes that payable, but that's what you all agreed, so I'm going to let you figure that out. But, technically, that is within 10 days of today.

All right. Supervised release, we discussed. That's the up to 3 years. We discussed the immigration consequences of pleading guilty. Financial disclosures.

So, Mr. Roberts, there's this paragraph under which the Defendant agrees within 30 days of signing the plea he is going to provide a full financial affidavit to the United States. He is going to provide all of his tax

documents. He's going to sign all these documents that are going to allow the United States to get all his financial documents, his tax documents. He's going to give them permission to get all of his financial documents. He's going to do that within 30 days.

I am told that there is sort of an extra agreement between the parties where he has said he's not going to provide that and you have said you're willing to go forward with the plea, you're willing to accept that here, but what that means is you will not request the third level for acceptance?

**MR. ROBERTS:** That's correct, Your Honor. He would be obligated to provide those financial disclosures, but if he does not, then the United States will not move for the third point for acceptance of responsibility.

**THE COURT:** Okay. So, I'm understanding that that is sort of an agreement that is now on the record, though not reflected in the document, but that both parties believe that with those changes they can go forward and be bound by the remainder of the agreement.

All right. The next paragraph, paragraph 6, is sentencing recommendations. Here, we have talked about a lot of recommendations that the United States agrees to make to the Court at sentencing. The recommendation that you be sentenced within your guidelines, the recommendation that

perhaps you get 2 levels off your offense level for pleading guilty, perhaps a recommendation in the future if they believe it's warranted that you get time off for cooperating.

What this paragraph makes clear is that your plea agreement is just a contract between you and the federal prosecutors here. So, the District Judge had nothing to do with negotiating the plea. She has not accepted the plea and she has not agreed to any of these terms.

And the prosecutor has no ability to bind the Judge to any of its recommendations. All he can do is promise to make them, to make the recommendations. What this paragraph makes clear is that the District Judge could reject any or all of those recommendations. And if she does that, if that happens, that would not be a basis on which you could take back your guilty plea if you entered it today, and it would not be a basis on which you could take back your promises in the plea agreement.

Do you understand this paragraph?

**THE DEFENDANT:** Yes, Your Honor.

**THE COURT:** Any questions about it?

**THE DEFENDANT:** No, Your Honor.

**THE COURT:** All right. The next paragraph discusses your right to appeal; that is, to complain to a higher court if you believe this court does something wrong

and to ask the higher court to fix it.

Normally, you could plead guilty and appeal; that is, complain to a higher court about your sentence for any reason at all. However, under this agreement, you give up almost all of your right to appeal your sentence.

You are left with only four grounds on which you would be allowed to appeal your sentence. The first is if your sentence exceeds that statutory maximum. So, it goes higher than the three years of prison, three years of supervised release, the highest fine.

If it goes higher than that, you can appeal your sentence.

Do you understand that one?

**THE DEFENDANT:** I do.

**THE COURT:** All right. The second is after the District Court selects a guidelines range, if she sentences you higher than that range, you can appeal it. We've already mentioned that she has the power to sentence you higher or lower, but if she sentences you higher, you can appeal the sentence.

What you cannot appeal, however, is if you think she does a poor job of getting to the guidelines. So, you think she applies a part of the guideline she shouldn't have, she doesn't apply a part she should have, she relies on a finding of fact you think is wrong. You cannot appeal

that.

But once she selects the guidelines range, if she goes higher than that range, you can appeal it.

Do you understand that?

**THE DEFENDANT:** Yes.

**THE COURT:** Any questions about it?

**THE DEFENDANT:** No.

**THE COURT:** The third ground on which you can appeal is if your sentence violates the Eighth Amendment to the Constitution. The Eighth Amendment prohibits cruel and unusual punishment and excessive fines. If your sentence violates that, you can appeal it.

Do you understand that one?

**THE DEFENDANT:** Yes, Your Honor.

**THE COURT:** The fourth and final ground on which you are allowed to appeal under this agreement is if the United States is unhappy with your sentence for any reason at all, then -- and they appeal, then you can appeal it for any reason that you want.

Do you understand that these are the only four grounds on which you may appeal your sentence under this agreement?

**THE DEFENDANT:** Yes, Your Honor.

**THE COURT:** Do you have any questions about any of that?

**THE DEFENDANT:** No, I do not.

**THE COURT:** All right.

**MR. HIRSCHHORN:** Your Honor?

**THE COURT:** Yes, sir.

**MR. HIRSCHHORN:** As matter of principle, I object to the -- we signed it. I just want you to know I've always felt it --

**THE COURT:** You object to the --

**MR. HIRSCHHORN:** No, no. We don't object to it because we signed it. I'm just saying as a matter of personal principle, I have always objected to the strong-arm waiver of the right to an appeal.

Having said that, that's what we have 2254 for -- or 20 -- yeah, 2255. But I do want it clear that there is a basis to appeal in the event this sentence violates the Eighth Amendment with respect to excessive fines.

**THE COURT:** Yep, it's built right in there.

**MR. HIRSCHHORN:** Thank you.

**THE COURT:** All right. The next paragraph, paragraph 8, called, Middle District of Florida Agreement, means that this plea agreement binds only you and the federal prosecutors in this part of Florida.

In other words, it does not bind any state prosecutors, no federal prosecutors in other districts, no international prosecutors, just you and the federal

prosecutors here.

Do you have any questions about that?

**THE DEFENDANT:** No, Your Honor.

**THE COURT:** All right. We are going to skip ahead a bit. We are going to talk about the factual basis, but we'll come back to that. What I'd like to do is skip to page 22, paragraph 12.

What this says -- and it seems perhaps to require some clarification here -- is that this agreement is the entire agreement between you and the United States.

Normally, what that means is that if you have been given any other kind of promise, guarantee, or assurance, something you would or would not get, something that would or would not happen, if it is not written in this document, then it does not count and you cannot rely on it.

What I understand is the exception to that is this agreement that's been made between the parties that you do not intend to comply with paragraph 5 regarding financial disclosures. And in exchange, the United States intends to -- well, this is a variation on its -- its obligations in the agreement, but it does intend to withhold the third level recommendation of acceptance of responsibility.

Is there any other guarantee, promise or assurance that has been made that is not written in this document.

**MR. HIRSCHHORN:** Yes, Your Honor.

Your Honor, the paragraph which requires restitution for $34 million. We also have an email exchange from Mr. Ross that the -- upon payment of the $34 million, the Special Agent, Mr. Macy, who's the Case Agent on this will close out his file and there would not be a referral to the civil people.

That may be sort of like a pyrrhic victory because the minute Mr. Liburdi's $34 million hits the United States Treasury, the IRS algorithm or AI is going to spit out a deficiency notice. But that's an issue we have to take up with the civil side because we know and I confirmed that with the Department of Justice Tax Division, Mr. Tortella, and I've known for years that the criminal division cannot bind the Civil Division. And it's a matter we take up, which, by the way, was why it was so important to switch the tax year to 2023 for strategic reasons with respect to negotiating and dealing with the IRS on the civil side.

But that was the promise, that his case is going to be closed out and there will be no referral to civil.

The second promise is that the government would take no position regarding my request to waive Presentence Investigation Report.

We've already discussed --

**THE COURT:** To waive the Presentence Report.

**MR. HIRSCHHORN:** Presentence Investigation Report,

yes. We've already discussed no financial disclosure under that paragraph. And the designated items of forfeiture will be replaced by -- in the bank fraud case will be replaced by a voluntary civil forfeiture proceeding.

It's my hope that we can expedite that at the appropriate time depending on my further discussions with Ms. Nebesky regarding 205 and 269. Implicit in this is that there will be no substitute forfeiture judgment because the tax count doesn't call for forfeiture. But this forfeiture is sort of voluntary in exchange for the cap of 3 years on the tax county.

So, the bank fraud charge count, the indictment that's being dismissed does have a forfeiture count which says, in essence, if X number of dollars aren't achieved from the forfeiture of the assets, the government reserves the right to seek a substitute forfeiture judgment, but there is no such provision in this plea agreement giving them that right.

**THE COURT:** I guess the caveat to that would be a legal one, which is there is a restitution amount and under the Federal Debt Collection Procedures Act, there are some tools that they can use for that, right?

Okay. Sorry. Go ahead, Mr. Hirshhorn.

**MR. HIRSCHHORN:** No, I know you're saying if there's a forfeiture initiated, we have the opportunity to

take on the government and try to get the forfeiture switched over to restitution. I don't know if that would apply to civil tax restitution, but the $34 million that we owed is going to be paid from the sale of the house at 101.

**THE COURT:** Okay. So, as far as forfeiture, what I'm understanding is the agreement here is -- is not really an agreement. You're just saying we're working with Nebesky to try to make some deals on the real property. We believe that because we're going to pay our entire restitution amount and because there is no forfeiture money judgment essentially language here, there is not an opportunity to collect substitute assets in this case.

I understand your position there because they're seeking to forfeit very specific assets. I guess the only caveat I would want to make sure the Defendant knows is that -- and I know your attorneys have talked to you about this, but when we talk about substitute assets, what we're talking about is when forfeiture is a part of your sentence. And we've already talked about your forfeiture here is this voluntary side agreement on civil forfeitures.

But when forfeiture is part of your criminal sentence, there is this language that says if we can't find the property that was the proceeds of this or that was used to commit this, we're going to take anything you own up to the amount of that property until that amount is satisfied.

Here, it's a little different because forfeiture is not a part of your criminal sentence. You are agreeing that they can civilly forfeit specific assets. And civil forfeiture is done -- can be administratively, it can be in sort of civil in rem proceedings against the property itself, but you don't get to sub out usually property in those proceedings.

The caveat is if you do not pay your restitution, that $34 million -- and I know your attorney says it's not a problem, it's going to be paid immediately. But if you don't, there are statutes that the government can use to say, you don't want to give me $34 million? No problem. I will take everything that you own until I have that $34 million in my pocket. It can be something you own now, it can be something you own in 10 years, but I'll just keep taking until I get that $34 million.

So, that sort of operates as a substitute asset thing and I just want to make sure we're all on the same page there about that.

**MR. HIRSCHHORN:** We are with that.

**THE COURT:** Great.

**MR. HIRSCHHORN:** There is no question about it. I just wanted to make sure that's what we were talking about.

**THE COURT:** Okay. Perfect.

**MR. HIRSCHHORN:** Not what the dismissed indictment

was talking about.

**THE COURT:** So here's what I understand are our --

**MR. HIRSCHHORN:** Excuse me. One last thing.

**THE COURT:** Sure.

**MR. HIRSCHHORN:** Now that Mr. Roberts is here, could we just confirm the discussion regarding the fine?

**THE COURT:** Yes.

Mr. Roberts, within the plea agreement, as you know, there are statutes that indicate certain felonies, $250,000 fine. Within this specific statute, it caps it at $100,000. It's -- you all have some different views on that -- how that applies particularly. But, in this case, it seems everyone agrees the max here is the $100,000, not the $250,000. The extra language is what Ms. Mackay represented.

Is that your understanding?

**MR. ROBERTS:** That's correct.

**THE COURT:** Okay. Great. The second issue is that there is language within the fine portion of the maximum penalties provision of the plea agreement that indicates the fine could be either the fine amount or twice the amount of gain or loss.

I don't believe that that is housed in the statute, and so I have advised him that I think the maximum fine here is $100,000.

Do you have a different view on that?

**MR. ROBERTS:** Your Honor, that's my view as well. We received some guidance from DOJ-Tax regarding the input, adding some certain language in there. When looking at the statute, it says $100,000. So I'm fine with striking that language.

**THE COURT:** All right. Excellent. Thank you, Mr. Roberts.

All right. I would like to confirm at this point that the only deviations from what is written in the plea agreement are as follows. And we'll start with that one.

The fine that the United States is eligible to seek and that the Court is eligible to impose in this case is $100,000.

The Defendant does not intend, pursuant to paragraph 5 as written, to actually cooperate with the financial disclosure obligation. The United States agrees to accept that and will not recommend the third level for acceptance of responsibility.

There is an agreement, as I understand it, which I'm not sure is terribly meaningful, that if you pay your $34,000 -- when your $34 million -- and I know it's not $34 million, it's more than that -- I'm saying that as a shortcut -- I don't remember the exact amount -- is timely paid -- and here you have agreed to pay it within 6 months

of sentencing.

If that is timely paid, Special Agent Macy himself will not refer this to the Civil Division for prosecution. What that doesn't mean is that the Civil Division won't investigate it. It doesn't mean the Civil Division can't investigate it. They very well might, but that guy's not going to try to get involved.

**MR. HIRSCHHORN:** When we say Special Agent Macy, we really mean his office. I mean, there's no sense in having Special Agent Macy not doing it if the guy at the desk or lady at the desk next to him does. But we agree, it's just that he is not going to or that office -- this -- the Special Agent Criminal Investigation -- used to be called Division --

**THE COURT:** Okay. So, essentially, IRS-CI Tampa is not going to recommend or refer this to Civil, is that it?

**MR. ROBERTS:** My conversations were with Special Agent Spencer Macy. That's what I put in an email. The general understanding is that he's not going to be reaching out to Civil in order for Civil to investigate. However, that does not bind Civil in any way. The most important thing -- this all, frankly, is much ado about nothing. The most important thing about this is that this does not bind Civil in any way. He's not going to affirmatively seek out

further enforcement from Civil. I wouldn't expect his office to either, as that's, you know, what we've discussed.

However, Civil is still not bound by this.

**THE COURT:** Yeah.

**MR. ROBERTS:** So, Your Honor accurately summed it up.

**MR. HIRSCHHORN:** I take umbrage. It's a lot to do about something. And I agree, CI cannot bind the Civil. And based on what counsel just said, I'm okay with that.

**THE COURT:** Okay. Great. And then the final is that the government has agreed not to oppose Defendant's request that the Court waive the Presentence Investigation Report.

Does that encapsulate your understanding of the agreements outside of the plea agreement? The only caveats to paragraph 12?

**MR. ROBERTS:** That's correct, Your Honor. I'm not sure if even the waiver of the Presentence Investigation Report would qualify as some sort of agreement in order to induce him to plead. If it is something, then certainly we can add that in, but we've said that we'll take no position on that.

**THE COURT:** I'm happy to have both officers of the Court represent that they understand those to be the remainder of the agreement. And we will note those in our

minutes so that there is a record that all parties have noted and agreed.

Is that your understanding of the only caveats to paragraph 12, Mr. Hirschhorn?

**MR. HIRSCHHORN:** Yes, Your Honor.

**THE COURT:** All right. And Mr. Liburdi, is that your understanding that those are the only differences between your agreement with the United States and what is written in this document?

**THE DEFENDANT:** Yes, Your Honor.

**THE COURT:** Any questions about it?

**THE DEFENDANT:** No.

**THE COURT:** All right. Is there any other part of your plea agreement that you would like to discuss or that you'd like to discuss more?

**THE DEFENDANT:** Not at this moment, Your Honor.

**THE COURT:** Well, this is the time. I don't -- I want you to feel like this is the moment that you have to understand it. So, if there's anything that you want to talk about, let's talk about it.

**THE DEFENDANT:** No, there's nothing further than that.

**THE COURT:** All right. Do you feel you understand the entire agreement?

**THE DEFENDANT:** I'm sorry? What was that?

**THE COURT:** Do you feel you understand the entire agreement?

**THE DEFENDANT:** Yes, Your Honor, I do.

**THE COURT:** Are you willing to be bound by all of it?

**THE DEFENDANT:** I am, Your Honor.

**THE COURT:** All right. Let me ask you, do you feel you understand the rights that you have and the rights that you give up by pleading guilty?

**THE DEFENDANT:** Yes, Your Honor, I do.

**THE COURT:** Do you feel you understand the charge against you and the penalties it carries?

**THE DEFENDANT:** I do, Your Honor.

**THE COURT:** Do you understand all the uncertainty with sentencing that you face?

**THE DEFENDANT:** Yes, Your Honor.

**THE COURT:** Is there anything else that you need to think about, to ask questions about or to speak to your attorneys about before you decide how to proceed?

**THE DEFENDANT:** No, Your Honor.

**THE COURT:** All right. Then please stand, sir.

**MR. HIRSCHHORN:** Your Honor, excuse me. Before you --

**THE COURT:** Of course.

**MR. HIRSCHHORN:** I need to consult just for a

second.

(Pause in proceedings.)

**THE COURT:** Is there anything else that -- that you want to ask about or talk about or think about before we go forward?

**THE DEFENDANT:** No.

**THE COURT:** Then please stand, Mr. Liburdi.

I will ask you directly. How do you plead, guilty or not guilty, to Count One of the superseding information?

**THE DEFENDANT:** I plead guilty, Your Honor.

**THE COURT:** All right. You can be seated, sir.

Before the Court can accept a guilty plea, it must be certain that there are facts that support it. And, so, I'm going to ask the government to tell me the facts he believes the government could prove if the case were to go to trial. I expect he will read directly from your plea agreement, but I'd like you to listen carefully because at the end I'm going to ask you if you agree with those facts or if there are some with which you disagree. And I need you to recall that whatever you admit today can be used against you.

Mr. Roberts?

**MR. ROBERTS:** Thank you, Your Honor.

And, yes, I will be reading from the plea agreement starting on page 20.

On or about September 16, 2024, the Defendant did willfully make and subscribe and did willfully aid, abet, assist and cause to be so made and subscribed a U.S. Individual Income Tax Return, IRS Form 1040, for the tax year 2023, which was verified by a written declaration that it was made under the penalties of perjury and which he did not believe to be true and correct as to every material matter.

When he did so, the Defendant knew the income tax return was not true and correct in all material respects because it contained falsehoods related to the domestic source of his reported taxable income.

Specifically, contrary to the assertions made on his 2023 IRS Form 1040, the Defendant generated the vast majority of his reported taxable income through multiple U.S.-based limited liability companies, including Green Brick Media, LLC, which elected an S-Corporation status. On his above-described 2023 IRS Form 1040, the Defendant falsely indicated that virtually all of these business incomes were instead sourced by GGN Group, LLC, a U.S. Virgin Islands-based entity rather than U.S.-based entities which actually sourced the income.

This willful and materially false statement facilitated the Defendant's claim of EDC beneficiary exclusions of income not otherwise eligible for this

exclusion, as the income was not sourced in the U.S. Virgin Islands.

The above-described misrepresentation was material and the Defendant knew it was material to the IRS's ability to determine the correct amount of the Defendant's tax due and owing for the tax year 2023.

Further, the Defendant intended to conceal the domestic source of his income from the IRS to reduce the amount of his tax due and owing to the IRS.

As a result of his false and fraudulent statements in the Defendant's 2023 IRS Form 1040, the Defendant willfully underreported the amount of tax due and owing to the IRS in the amount of $9,881,118. The Defendant also acknowledges as relevant conduct for purposes of the plea and sentencing that he underreported income on his 2021 IRS Form 1040 resulting in an additional tax loss to the government of $5,383,175. And on his 2022 IRS Form 1040, resulting in an additional tax loss to the government of $19,582,088.

The total tax loss to the government from the Defendant's willful conduct is therefore $34,846,381.

What I read is merely a summary of some of the events, some of the persons involved and other information related to this case. It does not include, nor is it intended to include, all of the events, persons involved, or

other information related to this case.

**THE COURT:** All right. Thank you.

Mr. Liburdi, did you hear everything that Mr. Roberts said?

**THE DEFENDANT:** I did, Your Honor.

**THE COURT:** And are those facts true?

**MR. HIRSCHHORN:** Your Honor, before he answers, I need to show him one document.

**THE COURT:** All right.

(Pause in proceedings.)

**THE COURT:** All right.

**MR. HIRSCHHORN:** Sorry, Judge. Thank you.

**THE COURT:** All right. And are those facts true?

**THE DEFENDANT:** Yes, Your Honor.

**THE COURT:** Are there any of those facts with which you disagree?

**THE DEFENDANT:** No, Your Honor.

**THE COURT:** All right. I do find that those facts are sufficient to support the essential element -- oh, I'm sorry. There is one essential element that I think is implied but perhaps not stated.

In submitting those false forms, did you intend to do something illegal?

**THE DEFENDANT:** May you repeat the question one more time, Your Honor, please?

**THE COURT:** In submitting those forms, did you intend to do something that violated the law?

**THE DEFENDANT:** I was relying on the information -- or the -- yeah, sorry. Rather the information of tax preparers and professionals and attorneys as well.

**THE COURT:** All right. Well, one of the elements of this crime is the fourth, which says when the defendant did so, meaning, helped or made the tax-related document that you knew contained false material information, when the Defendant did so, he intended to do something that he knew violated the law.

I suppose it could be inferred that submitting something under penalty of perjury that you knew contained false material information would be perhaps obviously in violation of the law, but I think I just need to know whether that's a yes or a no there.

So, when you did that, when you helped make the tax-related document that you knew contained false material information, did you do that intending to do something you knew violated the law?

**THE DEFENDANT:** I'm sorry. I'm struggling with this. Can one last time you please repeat that question for me?

**THE COURT:** Yes. And I am happy to take a recess if the parties would like.

**THE DEFENDANT:** May we take the recess?

**THE COURT:** Sure. Do you need any information before we do it? And just to be clear, I am looking at paragraph 3, which are the elements of the offense as stated in your plea agreement.

But I'm happy to take a recess. And I think Ms. Reaves will also come with me because we have another hearing that we will do very briefly and we will return.

Please let us know when you're ready to proceed.

(Brief recess taken, after which the following proceedings were had.)

**THE COURT:** All right. Ms. Reaves, would you please call the case?

**DEPUTY CLERK:** Yes, Your Honor. We are back on the record in 8:24-cr-564. United States vs. Daniel Liburdi.

**THE COURT:** All right. Mr. Hyman?

**MR. HYMAN:** Yes, Your Honor. Thank you. After discussion, Mr. Liburdi is prepared to answer the question.

**THE COURT:** All right. Mr. Liburdi, when we were last here we talked about the fact that you -- you have admitted that you helped make these Form 1040s that contained material information that was false as to the domestic source of your income. And I had asked you if, when you did that, you intended to do something that you

knew violated the law.

**THE DEFENDANT:** Yes, Your Honor.

**THE COURT:** All right. I do find that those facts are sufficient to satisfy the essential elements of Count One of the superseding information.

Mr. Liburdi, let me ask you. Are you pleading guilty freely and voluntarily?

**THE DEFENDANT:** Yes, Your Honor.

**THE COURT:** Has anyone threatened you, forced you, coerced you, or intimidated you in any way to get you to try to plead guilty?

**THE DEFENDANT:** No, Your Honor.

**THE COURT:** Other than those in the plea agreement and those we've discussed here today, has anyone made you any promise or guarantee or assurance in exchange for your guilty plea?

**MR. HIRSCHHORN:** So, I've made promises, Judge, regarding -- recommendation regarding -- with respect to RDAP. Also, a request that the Defendant be permitted to drive again. And I've also committed -- the government's got nothing to do with this. And I've also committed to the client to do my best at sentencing. Those are the promises made.

**THE COURT:** Well, I think we are all certain you will do your best at sentencing. And I -- it sounds like

your attorney's going to ask if you can participate in RDAP. That will be for the District Judge to decide. And your attorney is going to ask if you can have your right to drive restored. And, of course, that will be entirely for the District Judge to decide assuming there's no incarcerative sentence.

All right. So, other than your attorney basically talking about his strategy at sentencing, which, of course, does not bind the Court in any way, other than the promises we've discussed here and those written in your plea agreement, is there any other promise, guarantee, or assurance that's been made to you in exchange to get you to plead guilty?

**THE DEFENDANT:** No, Your Honor.

**THE COURT:** All right. Has anyone coached you or suggested to you that you say anything other than the truth here today?

**THE DEFENDANT:** No, Your Honor.

**THE COURT:** Have you, in fact, told the truth today?

**THE DEFENDANT:** Yes, Your Honor.

**THE COURT:** Is the United States satisfied with the colloquy?

**MR. ROBERTS:** Yes, Your Honor. Thank you.

**THE COURT:** Is the defense?

**MR. HYMAN:** Yes, Your Honor.

**THE COURT:** All right. And I'll let either one of you take it, Mr. Hyman or Mr. Hirschhorn, but I need to ask one of you, are you satisfied that your client is pleading guilty freely and voluntarily?

**MR. HIRSCHHORN:** I am satisfied he's pleading guilty freely and voluntarily and after much thought.

**THE COURT:** Are you -- and what's the last part.

**MR. HIRSCHHORN:** Thought.

**THE COURT:** Okay. And after much thought. And are you satisfied -- I'm going to ask you a few questions. I don't want to make you uncomfortable standing up and sitting down.

Are you satisfied that he appreciates the charges and proceedings against him?

**MR. HIRSCHHORN:** He does.

**THE COURT:** Are you satisfied that you have been given enough time to review the charging instrument and the evidence in the case?

**MR. HIRSCHHORN:** Yes, I have.

**THE COURT:** And have you been given enough time to talk to your client about them as well as his options, including the option to go to trial?

**MR. HIRSCHHORN:** Yes, of course.

**THE COURT:** Has he been able to assist you in his

defense?

**MR. HIRSCHHORN:** Very much so.

**THE COURT:** All right. Thank you.

Mr. Liburdi, I find that you are pleading guilty -- that you are alert and intelligent. I find that you appreciate the rights you have and the rights that you give up by pleading guilty. I find that you appreciate the charges and proceedings against you. I find that you are making the decision to plead guilty freely, knowingly, and voluntarily and with the advice of lawyers with whom you say you are satisfied, and that you have admitted facts that support the essential elements of the charge.

And, so, I'm going to recommend to the District Judge that she accept your guilty plea. I will make that recommendation in writing and you will have 14 days from the time I file it to object to it, meaning to disagree with it for any reason.

If you do not, normally what would happen is your attorney would make an appointment with the Probation Office so that they could interview you for that sentencing report we discussed. It is to be determined, one, whether that will be required following your counsel's motion to avoid it. Or, two, if it is required, it is your choice whether to agree to an interview. It requires your consent.

Normally then I would expect sentencing would

occur in about 70 to 90 days.

Is there any reason to believe that sentencing will be delayed?

**MR. ROBERTS:** It's possible, but it's way too early to say.

**THE COURT:** All right. Okay. Is there anything else we should address, Mr. Roberts?

**MR. ROBERTS:** Not from the government, Your Honor.

**THE COURT:** Mr. Hirschhorn? Nervous to ask.

**MR. HIRSCHHORN:** No, Your Honor. But after you recess, can the prosecution and I approach the bench for a moment?

**THE COURT:** Of course.

**MR. HIRSCHHORN:** Not related to the case.

**THE COURT:** Of course.

And Mr. Liburdi, before we go, is there anything else you think we should talk about?

**THE DEFENDANT:** No, Your Honor.

**THE COURT:** All right. Thank you. We will be in recess. And Mr. Hirschhorn and Mr. Roberts, you are welcome to approach.

(Proceedings concluded.)

UNITED STATES DISTRICT COURT )
)
MIDDLE DISTRICT OF FLORIDA )

REPORTER TRANSCRIPT CERTIFICATE

I, Howard W. Jones, Official Court Reporter for the United States District Court, Middle District of Florida, certify, pursuant to Section 753, Title 28, United States Code, that the foregoing is a true and correct transcription of the stenographic notes taken by the undersigned in the above-entitled matter (Pages 1 through  inclusive) and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States of America.

/s Howard W. Jones

______________________________
Howard W. Jones, RDR, RMR, FCRR
Official Court Reporter
United States District Court
Middle District of Florida
Tampa Division
Date: 06/05/26